IN THE COURT OF APPEALS

7/29/97

OF THE

STATE OF MISSISSIPPI

NO. 95-CC-01191 COA

HARISHANKAR LAL SANGHI APPELLANT

v.

MISSISSIPPI EMPLOYEE SECURITY

COMMISSION APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JERRY OWEN TERRY, SR.

COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: PRO SE

ATTORNEY FOR APPELLEE: JAN GARRICK

NATURE OF THE CASE: UNEMPLOYMENT BENEFITS

TRIAL COURT DISPOSITION: NOT ENTITLED TO UNEMPLOYMENT BENEFITS DUE TO MISCONDUCT

MOTION FOR REHEARING FILED:8/12/97

CERTIORARI FILED: 10/9/97

MANDATE ISSUED: 1/5/98

BEFORE McMILLIN, P.J., HERRING, AND KING, JJ.

HERRING, J., FOR THE COURT:

This case involves an appeal from an order of the Circuit Court of Harrison County, Mississippi, which affirmed a decision of the Mississippi Employment Security Commission (MESC) to deny unemployment benefits to Dr. Sanghi. In pursuit of his appeal, Dr. Sanghi, proceeding pro se, cites the following assignments as points of error, which are taken verbatim from the Appellant's brief:

I. ISSUE OF CONCLUSIVENESS OF FEDERAL EMPLOYER'S FINDINGS

(1) WHETHER EMPLOYMENT SECURITY COMMISSION SHOULD TAKE THE INITIAL FINDINGS OF FEDERAL EMPLOYER AS CONCLUSIVE AS TO REASONS FOR

REMOVAL, UNLESS THE FEDERAL EMPLOYER PROVIDES OPPORTUNITY FOR A HEARING.

(2) WHETHER THE CONCLUSION OF EMPLOYMENT SECURITY COMMISSION OF UNSPECIFIED "MISCONDUCT" IS EQUIVALENT TO "PROFESSIONAL MEDICAL MISCONDUCT" FOR WHICH APPELLANT IS DISCHARGED. WHETHER THE NON-MEDICAL REFEREE WHO CONDUCTED THE HEARING IS QUALIFIED AND AUTHORIZED TO DECIDE ON ISSUES OF "PROFESSIONAL MEDICAL MISCONDUCT."

II. ISSUE OF MEDICAL EVIDENCE IN PREFERENCE TO HEARSAY STATEMENTS.

(1) ACCORDING TO RULES OF EVIDENCE, WHETHER EMPLOYMENT SECURITY COMMISSION SHOULD IGNORE THE MEDICAL CERTIFICATE BY TREATING PHYSICIAN IN PREFERENCE TO HEARSAY STATEMENTS OF THE EMPLOYER.

(2) WHETHER EMPLOYMENT SECURITY COMMISSION ERRED IN NOT ATTEMPTING TO RECONCILE THE CONTRADICTORY ACTION OF THE FEDERAL EMPLOYERS WHO DENIED THE CONNECTION BETWEEN THE ILLNESS AND DEFICIENCY IN ORDER TO DISCHARGE HIM, BUT CERTIFIED AS TO EXISTENCE OF CONNECTION BETWEEN THE ILLNESS AND DEFICIENCY IN ORDER TO MAKE HIM ELIGIBLE FOR VOLUNTARY DISABILITY RETIREMENT.

III. ISSUE OF WHETHER THE RULE IS FAIRLY AND CONSISTENTLY ENFORCED.

(1) WHETHER THE VA IS ENFORCING THE RULE REGARDING DICTATION OF SUMMARIES FAIRLY AND CONSISTENTLY, WHEN DELINQUENCY IN DICTATION OF SUMMARIES IS A PERPETUAL PROBLEM THROUGHOUT THE VA SYSTEM.

(2) WHETHER THE VA ERRED IN NOT FOLLOWING THE POLICY OF "LIKE PENALTY FOR LIKE OFFENSES" IN THE CASE OF THE APPELLANT.

After careful consideration of the facts and applicable law in this case, we affirm the judgment

of the lower court.

FACTS

Dr. Harishankar L. Sanghi, the Appellant, is a psychiatrist who was employed by the Veterans Administration and the Veterans Affairs hospital system (VA) for over seventeen years. For the past seven years, he has been employed by the VA hospital in Biloxi, Mississippi. Throughout his employment with the VA, an executive agency of the United States, Dr. Sanghi received satisfactory evaluations for his work by his supervisors. However, in 1993 Dr. Sanghi began to engage in a pattern of conduct whereby he failed to complete numerous patient discharge summaries as required by both hospital and governmental regulations. These patient discharge summaries are important to the patient because it allows a subsequent physician or other health care provider to know, with certainty, what treatment the patient has received from the previous physician, and when such treatment was given. In addition, government regulations require the prompt preparation of patient discharge summaries in order for a government hospital to maintain its accreditation.[1]

In March 1993, the Dr. Sanghi's supervisors began admonishing him for not preparing his patient discharge summaries. Dr. George Tipton, his immediate supervisor and chief of the psychiatric services, testified before the MESC hearing officer that he would direct Dr. Sanghi to complete the summaries, but Dr. Sanghi would consistently fail to do so. Eventually, on May 23, 1994, Dr. Sanghi was placed on a ten day suspension for his omissions. When he returned from the suspension, he dictated discharge summaries for ten current patients, but never completed the delinquent discharge summaries.

On June 6, 1994, Dr. Sanghi's supervisor gave him seven days to complete twenty seven delinquent summaries, but he failed to do so. Thereafter, on June 28, 1994, Dr. Tipton wrote a letter to Dr. Sanghi and informed him that he would recommend that Dr. Sanghi be discharged from the position of VA staff psychiatrist. According to Dr. Tipton's letter, the delinquency of the discharge summaries ranged from 44 days to 142 days, and that Dr. Sanghi's failure to complete the summaries by June 15, 1994, or to comply with the directions of his supervisor to do so, were the reasons for the discharge. Furthermore, Dr. Sanghi was informed by Dr. Tipton that his failure to dictate the discharge summaries compromised quality patient care and was a violation of the federal government's Code of

Federal Regulation, Title 5, Section 2635.101 (b)(5), which requires that an employee put forth an honest effort in the performance of his duties. Finally, Dr. Sanghi was informed that he had the right to respond to Dr. Tipton's proposed recommendation for discharge, and that he had the right to be represented by an attorney at all stages prior to a final decision on the discharge being made by the VA director.

Dr. Sanghi responded to Dr. Tipton's letter on July 3, 1994, and stated:

The reasons for proposed removal from my position are correct to some extent. Namely for failure to comply with VHA standards and the medical center's requirement for dictation of summaries and failure to complete deliquent [sic] discharge summaries by June 15, 1994.

Dr. Sanghi went on to say in his letter that his failure to follow instructions was due to mental illness. According to evidence presented at a later time to the MESC hearing officer, Dr. Sanghi had been under psychiatric treatment from Dr. William L. Bass of Gulfport, Mississippi, since 1988 with a diagnosis of bipolar disorder and narcissistic personality disorder. In a letter dated January 17, 1995, which was introduced at the MESC hearing, Dr. Bass explained that Dr. Sanghi's sister died sometime around the first of the year in 1994, and that he had a gradual onset of depression which, in Dr. Bass's opinion, was related to Dr. Sanghi's failure to complete his discharge summaries. In order to treat the depression, Dr. Bass stated that he tried several different medications, but Dr. Sanghi either did not respond to them or had side effects that created more problems. Eventually, Dr. Sanghi was put on Wellbutrin which, according to Dr. Bass, improved Dr. Sanghi's ability to concentrate and motivate himself. On July 18, 1994, Dr. Sanghi received a letter from George Rodman, the director of the VA medical center, that a decision had been made to discharge him, but that the decision would be held in abeyance to allow Dr. Sanghi to seek disability retirement in lieu of discharge.

Dr. Sanghi did thereafter apply for disability retirement, and his application was approved on September 19, 1994. Dr. Sanghi's retirement was scheduled to become effective on October 4, 1994. However, Dr. Sanghi decided to withdraw his retirement application, and he was officially discharged from his position as staff psychiatrist on November 4, 1994.[2] In a letter to Dr. Sanghi from George Rodman dated November 1, 1994, the following reasons were given for his discharge:

1. You failed to comply with VHA standards and the medical center's requirements regarding dictation of discharge summaries which require that patient discharge summaries be completed prior to discharge and final summaries signed within ten (10) days of discharge.

2. You failed to follow your supervisor's directions dated June 6, 1994, to complete twenty-seven (27) delinquent summaries by June 15, 1994.

3. Your failure to dictate discharge summaries compromises quality patient care and violates 5 CFR 2635.101 (b)(5) which states that employees must put forth an honest effort in the performance of their duties.

The letter from Rodman to Dr. Sanghi stated that since the reasons for the discharge involved a question of professional conduct or competence, Dr. Sanghi had the right to appeal the decision of

the VA, through the appropriate channels, to the Deputy Secretary of Health in Washington, D.C.. According to the evidence, Dr. Sanghi did appeal the VA's decision to terminate him. He also filed for unemployment benefits with the MESC.

CLAIM FOR UNEMPLOYMENT BENEFITS

Dr. Sanghi's initial claim for benefits under the Mississippi Employment Security Law[3] was filed on November 27, 1994. On December 28, 1994, the MESC claims examiner disqualified Dr. Sanghi for benefits pursuant to Section 71-5-513 A(1)(b) of the Mississippi Code of 1972 on the ground that Dr. Sanghi was discharged for misconduct connected with his work. Dr. Sanghi appealed the decision of the claims examiner on January 3, 1995, and a hearing was conducted by an appeals referee on January 23, 1995. After hearing testimony from Dr. Sanghi, Dr. Tipton and other VA representatives, and after considering the January 17, 1995, letter from Dr. Bass, the referee, ruled that Dr. Sanghi was disqualified from receiving unemployment benefits effective from November 5, 1994, until such time as he became re-employed and met other earnings requirements. The basis for the referee's decision was simply that Dr. Sanghi was guilty of misconduct, and therefore not eligible for benefits pursuant to section 71-5-513 A(1)(b) of the Mississippi Code of 1972, since he failed to dictate patient discharge summaries after being instructed to do so by the VA chief of staff, as well as by his immediate supervisor. The referee further noted in his opinion that while Dr. Sanghi had been under the care of a psychiatrist for approximately two years for depression, at no time was Dr. Sanghi advised by that psychiatrist that he was unable to perform his duties. In fact, at all times during the hearing, Dr. Sanghi maintained that he was able to perform all of his duties, except for the requirement to fill out the patient discharge summaries.

The decision of the appeals referee was appealed to the Board of Review of the Mississippi Employment Security Commission, and the referee's decision was affirmed on March 6, 1995. Dr. Sanghi then appealed to the First Judicial District of the Circuit Court of Harrison County, Mississippi, which issued an order affirming the decision of the Board of Review on September 18, 1995. In its order, the circuit court noted that Dr. Sanghi was pursuing a separate grievance through the administrative procedures of the Veterans Administration, and that the court's ruling dealt only with Dr. Sanghi's eligibility for unemployment benefits.

ANALYSIS

An appellate court's standard of review of the findings and decisions of an administrative agency such as the MESC is well established. The MESC's decision must remain undisturbed unless "the agency's order (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights." *Sprouse v. Mississippi Employment Sec. Comm'n,* 639 So. 2d 901, 902 (Miss. 1994) (citations omitted). Moreover, the appellate court should not "reweigh" the facts or substitute its own judgment for that of the administrative agency. *Sprouse*, 639 So. 2d at 902. *See also Mississippi Public Serv. Comm'n v. Merchants Truck Line, Inc.,* 598 So. 2d 778, 782 (Miss. 1992).

As stated by our Mississippi Supreme Court in *Mississippi Employment Sec. Comm'n v. Gaines*, 580

So. 2d 1230, 1234 (Miss. 1991), the Mississippi Employment Security Law was designed to give some protection to workers who, through no fault of their own, could not continue in their employment. The burden of proving misconduct by clear and convincing evidence rests with the employer. *Sprouse,* 639 So. 2d at 903.

As stated by the appeals referee, Section 71-5-513 A(1)(b) of the Mississippi Code of 1972 provides that an individual shall be disqualified for benefits if discharged by his employer for conduct that is determined by the Commission to be "misconduct." Misconduct has been defined for purposes of the statute as "[c]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employees." *Mississippi Employment Sec. Comm'n v. Percy*, 641 So. 2d 1172, 1175 (Miss. 1994) (citing *Mississippi Employment Sec. Comm'n v. Martin*, 568 So. 2d 725 (Miss. 1990); *Wheeler v. Arriola*, 408 So. 2d 1381 (Miss. 1982)). On the other hand, "[m]ere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, or inadvertances and ordinary negligence in isolated capacities . . . were not considered 'misconduct' within the meaning of the [S]tatute." *Shannon Eng'g & Constr. Inc. v. Mississippi Employment Sec. Comm'n,* 549 So. 2d 446, 449 (Miss. 1989). Insubordination has also been interpreted by the Mississippi Supreme Court to constitute misconduct. *Id.* at 449.

In the case *sub judice*, Dr. Sanghi consistently refused to prepare patient discharge summaries, beginning in 1993, and admittedly became seriously delinquent in the performance of his duties. Dr. Sanghi remained delinquent despite being admonished, both orally and in writing, on numerous occasions to complete the summaries. His failure to prepare these discharge summaries over a long period of time endangered his patients and the accreditation of the VA. Thus, there is substantial evidence to support the decision that Dr. Sanghi is ineligible for benefits, and we must affirm the decisions of the agency and the circuit court unless the decision was either arbitrary or capricious; beyond the scope of power granted to the MESC; or, in some way violated Dr. Sanghi's constitutional rights. With these guidelines in mind, we will address the assignments of error raised by Dr. Sanghi on appeal.

I. ISSUE OF CONCLUSIVENESS OF FEDERAL EMPLOYER'S FINDINGS

Basically, Dr. Sanghi argues that the VA's procedures in terminating him were flawed, in that he was not granted a hearing. Therefore, he claims that any findings of the VA in relation to his termination could not be relied upon by the MESC in denying him unemployment benefits. In this regard, Dr. Sanghi is correct in that the MESC cannot accept as conclusive the findings of a federal employer, when that federal employer has not provided a fair hearing to the employee. *See* 5 U.S.C.A. §§ 8502, 8502(b, d), 8506(a); *Smith v. District Unemployment Comp. Bd.,* 435 F. 2d 433 (D.C. Cir. 1970), and *Schulman v. Navy Regional Fin. Ctr.,* 38 Colo. App. 372, 560 P.2d 476 (Colo. Ct. App. 1976).

Dr. Sanghi also points out that the federal employers procedures were flawed in that the VA did not consider the factors set forth in *Douglas v. Veterans Admin.,* 5 M.S.P.R. 280, 304-06 (1981), in deciding upon the appropriate punishment. Those factors are as follows:

1. The nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

2. The employee's job level and type of employment, including supervisory or fiduciary role, contact with the public, and prominence of the position;

3. The employee's past disciplinary record;

4. The employee's work record, including length of service, performance on the job, ability to get along with his fellow workers, and dependability;

5. The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisor's confidence in the employee's ability to perform assigned tasks;

6. Consistency of the penalty with those imposed upon other employees for the same or similar offenses;

7. Consistency of the penalty with any applicable agency table of penalties;

8. The notoriety of the offense or its impact upon the reputation of the agency;

9. The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

10. Potential for the employee's rehabilitation;

11. Mitigating circumstances surrounding the offense such as unusual job tension, personality problems, mental impairment, harassment, bad faith, malice, or provocation on the part of others involved in the matter;

12. The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by employee and others.

*Douglas*, 5 M.S.P.R. 280, 304-06.

In line with this argument, Dr. Sanghi also argues that the appeals referee had no authority to decide matters of professional medical misconduct. Dr. Sanghi claims that only medical personnel can make this determination. This argument is wholly without merit. The only issue before the MESC was whether or not the claimant was entitled to unemployment benefits. This was not a medical

disciplinary proceeding, but rather a proceeding to determine if Dr. Sanghi was terminated for "misconduct," a term of general legal significance and not a medical term. Therefore, the *Douglas* factors are not applicable to the MESC. It seems that Dr. Sanghi has confused two distinct rights involved in this case: the right to proper termination procedures and the right to unemployment benefits. As to the first right, Dr. Sanghi is correct in citing to 38 U.S.C.A. §§ 7464 and 7462(a)(1), which give jurisdiction to a disciplinary appeals board to decide matters of professional conduct and competence in a disciplinary proceeding. However, in the case *sub judice*, we are not concerned with this right. Our only concern is the right to unemployment benefits under state law. As to this determination, the MESC has exclusive jurisdiction. Miss. Code Ann. § 75-5-1 (1972) et seq.

As to both of these contentions, the record clearly shows that the appeals referee conducted an independent review of the facts in the case before us. Dr. Sanghi was given a fair and full hearing before the appeals referee at which time he presented his theory of the case and was given the opportunity to answer the defense put forth by the MESC. Since the appeals referee did not rely on the VA's findings, any deficiency on the part of the VA in conducting their procedures following termination, including the right to a hearing and the right to the *Douglas* factors, have no relevance to the case *sub judice.* Therefore, this issue has no merit.

II. ISSUE OF WEIGHT OF MEDICAL EVIDENCE IN PREFERENCE TO HEARSAY

Dr. Sanghi's contends that the appeals referee relied upon hearsay testimony, to the exclusion of a medical certificate, in ruling that Dr. Sanghi was discharged for misconduct. At the hearing before the referee, Dr. Sanghi produced a medical certificate wherein his psychiatrist stated that Dr. Sanghi was being treated for depression. In response, the hospital's chief of staff, Dr. Clark, and chief of psychiatry, Dr. Tipton, testified that they didn't observe any depression on the part of Dr. Sanghi that would effect his job performance. It is this testimony that Dr. Sanghi now claims was hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. MRE 801(c). This challenged testimony was made by a declarant while testifying at the hearing and was based on personal knowledge as is required by Mississippi Rule of Evidence 602. Therefore, this point of error has no merit.

However, this point of error does demonstrate the true issue in this case: did the lower court err in finding that Dr. Sanghi was discharged due to misconduct? As stated supra, Section 71-5-513(A)(1)(b) of the Mississippi Code of 1972 lists misconduct as a ground for disqualification from unemployment benefits. This Mississippi Supreme Court has defined misconduct as:

[C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the [S]tatute.

*Allen v. Mississippi Employment Sec. Comm'n,* 639 So.2d 904, 907 (Miss. 1994).


In the case *sub judice,* Dr. Sanghi claims that his failure to complete the discharge summaries was a result of incapacity due to depression, thus exempting it from the definition of misconduct. The MESC contends that Dr. Sanghi's omissions were merely the result of insubordination, stemming from the fact that Dr. Sanghi dislikes paperwork. The Mississippi Supreme Court has held that insubordination is included within the scope of misconduct. *Gore v. Mississippi Employment Sec. Comm'n,* 592 So.2d 1008, 1010 (Miss. 1992). The *Gore* court defined insubordination as "[a] constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." *Id.* at 1010.

Dr. Sanghi admits that he did not complete the discharge summaries as ordered. He relies solely on his contention that his depression caused this failure. In support of his position, Dr. Sanghi presented a medical certificate to the appeals referee. This certificate stated that he was being treated for depression and that in the opinion of the treating psychiatrist, Dr. Bass, Dr. Sanghi's failure to complete the summaries was a result of this depression. The MESC countered that assertion with testimony from both the chief of staff and the chief of psychiatry, who testified that Dr. Sanghi appeared to be under no debilitating depression. Furthermore, Dr. Sanghi admits that he was capable of performing his other duties notwithstanding his depression. The appeals referee took these matters into consideration and decided this matter in favor of the MESC. In his decision, the appeals referee held:

The claimant alleged that his depression caused this deficiency in his work, performance, however, the claimant was under the care of a psychiatrist and the employer received reports from the psychiatrist periodically regarding the claimant's status. At no time did the psychiatrist advise the claimant or the employer that the claimant was not able to perform his duties . . . . It is the opinion of the Referee that failure to perform duties constitutes misconduct connected with the work as that term is used in the Mississippi Employment Security Law and, therefore, the decision of the claims Examiner will be modified as to the beginning date of the disqualification only.


Likewise, in its order affirming the review board, the Harrison County Circuit Court stated:

And the court having read the record in detail, and studied the briefs of the parties, and being fully advised, is of the opinion that the decision of the Board of Review of the Mississippi Employment Security Commission, rendered and entered on March 7, 1995, is supported by substantial evidence and the applicable law.


We agree with the circuit court and hold that the decisions of the MESC referee and board of review were based on substantial evidence, and therefore we have no authority to reverse. *Allen,* 639 So. 2d at 908.

III. WAS THE RULE FAIRLY AND CONSISTENTLY ENFORCED?

Finally, Dr. Sanghi claims that the rule requiring completion of discharge summaries was not fairly

and consistently enforced by the VA. Mississippi Employment Security Commission Regulation 1720 of the Administrative Manual states:

An employee shall not be found guilty of misconduct for the violation of a rule unless:

(1) The employee knew or should have known of the rule;

(2) The rule was lawful and reasonably related to the job environment and job performance; and

(3) The rule is fairly and consistently enforced.

However, "any decision of any administrative board or agency must be based upon substantial evidence appearing *in the record*." *Phillips v. Mississippi Veteran's Home Purchase Bd.*, 674 So. 2d 1240, 1242 (Miss. 1996) (emphasis added). In the case *sub judice,* the record contains no evidence of inconsistent enforcement of the rule by the VA. In fact, there are only two references in the record to any inconsistency of enforcement. First, in his closing arguments to the disciplinary appeals board, Dr. Sanghi made the following argument:

Dr. Husband testified that Dr. Wieland was as far as one year behind in his discharge summaries, and he was not disciplined for it. Also, Dr. Machan was behind on 17

discharge summaries according to the Delinquent Dictation Report dated January 4, 1993.[(4)]

The only other reference to inconsistency, and the only reference found in any document relating to the case involving the MESC, is found in a motion dated June 26, 1995. In that motion, Dr. Sanghi stated:

Plaintiff will show that Standards governing who can do discharge summaries and time frame requirements, are not consistently enforced.

(a) Who can do discharge summaries: In several VA Medical Centers, throughout the country, discharge summaries are done by non-physicians, such as physician's assistants, Nurse practitioners, Medical Records technicians, Nurse abstractors, social workers, psychologists and nursing assistants, etc. At the VA Medical Center, Biloxi, MS, discharge summaries are being prepared by physician's assistants and Nurse practitioners. These facts clearly indicate that the preparation of a discharge summary does not require the knowledge of a physician.

(b) Time frame to dictate discharge summary: It is stated in the operational guidelines that ideally it should be done, at least on the day of the patient's discharge. This rule is consistently violated by all physicians throughout the VA Medical Center, Biloxi, MS. There is always a delinquent list of discharge summaries by various physicians, and there always will be. It is generally understood that a delinquency of 60 days comes to the attention of administration.

Plaintiff will show that a former physician at the VA Medical Center, Biloxi, MS, was more than a year delinquent in discharge summaries, and no action was taken. Considering the evidence, based on facts, there is clear indication that the rule is inconsistently enforced. According to state law, this is

further ground for dismissal of culpability for a deficiency concerning dictation of delinquent discharge summaries.

Nowhere in this motion does Dr. Sanghi present any evidence substantiating his claims of inconsistent enforcement of the rule. Therefore, the circuit court properly resolved this issue in favor of the MESC. For the lower court to have held otherwise would have been a breach of its duty to base its decision on substantial evidence.

Similarly, Dr. Sanghi argues that the VA did not abide by its policy of like penalty for like offense. Dr. Sanghi claims that he "is the only physician, out of 15,000 VA physicians in the department of Veterans Affairs, within the last sixty years of its inception, who has been discharged for failure to dictate discharge summaries . . . ." Again, the record contains no documentation supporting this assertion. Therefore, this issue has no merit as we will not consider unsubstantiated assertions not found in the record.

In summary, a review of the record reveals that the decision of the MESC was based on substantial evidence. Furthermore, we have found nothing to suggest that the lower court's decision was either arbitrary or capricious, or infringed upon some constitutional right of Dr. Sanghi, or that the MESC acted beyond the scope of its powers. Therefore, we affirm the ruling of the Harrison County Circuit Court.

**THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLEE.**

**BRIDGES, C.J., McMILLIN, P. J., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., NOT PARTICIPATING.**

1. According to hospital policy, discharge summaries were routinely to be dictated by the physician one day prior to the patient's release from care. In death cases or cases with irregular discharges, the discharge summary was to be dictated within twenty four hours of the patient's release.

2. In his letter of January 17, 1995, Dr. Bass said that Dr. Sanghi's condition had stabilized and that he was coherent, free of psychotic symptoms, and could return to work and continue the treatment for his illness.

3. Miss. Code Ann. § 71-5-1, et seq. (1972).

4. Note that this document was prepared in relation to the Appellant's action with the VA, and not with the case immediately before this court.