568 So.2d 725 (1990)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION
v.
John MARTIN, Jr.
No. 07-CC-59379.
Supreme Court of Mississippi.
October 10, 1990.
*726 Leo T. Aragon, Jackson, for appellant.
Gloria Green, Jackson, Ruby White, Oakland, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court
John Martin, Jr. was terminated from his employment with Greenville Mills, Inc. because of his alcoholism. He applied for unemployment benefits through the Mississippi Employment Security Commission. His claim was denied and the denial for benefits was affirmed by the Appeal's referee and the Board of Review. Martin appealed the agency's decision to the Circuit Court of Washington County, which reversed the decision of the Board of Review and held that, as a matter of law, Martin's conduct did not amount to misconduct so as to disqualify him for unemployment benefits. Mississippi Employment Security Commission, (MESC), has appealed to this court and presents the following issue for decision:
Whether terminating an employee for absenteeism from work due to treatment for alcoholism constitutes "misconduct" so as to disqualify the individual from receiving unemployment compensation benefits.

FACTS
The facts of this case are undisputed. John Martin, Jr. had been employed by Greenville Mills, Inc. for almost 12 years when he was terminated on July 9, 1986. During the course of his employment, Martin exhibited problems associated with alcoholism. His supervisor advised him to seek treatment for the problem and he obtained treatment at the Delta Medical Center Alcohol and Drug Unit from December 30, 1985, to January 31, 1986. When Martin returned to work he was informed by his supervisor that further absenteeism due to his alcoholism would be considered unexcused absences and would result in his discharge.
Martin continued to have problems associated with alcoholism and in late June of 1986 he returned to the Delta Medical Center Drug and Alcoholic Unit for treatment. When he was hospitalized in June, Martin notified his employer that he would not be able to report for work. His absence for three days was excused because he told the department manager that he was ill. The week following the excused three day absence was a vacation week. Following the vacation week, Mike Kariro, the assistant employee relations manager for Greenville Mills, learned that Martin had entered the alcohol and drug center and placed a telephone call to him there.
On July 7, Martin's absences were considered unexcused and after three consecutive days of unexcused absences, he was terminated according to company policy and the agreement made with him following his first hospitalization. Kariro testified that Martin was dismissed because of the unexcused absences but added that Martin had also received a warning on 4-17-86 for entering the plant while under the influence of alcohol. Martin's account differs slightly in that he did not recall having been warned that any further absences related to alcohol would result in his termination.
When Martin was released from the hospital on or about July 31, he applied for unemployment benefits and was disqualified by the Claims Examiner on the ground that he had been discharged for misconduct connected with his work. The referee found the facts as stated by the Claims Examiner, and the agency's Board of Review adopted the findings of fact and opinion of the referee and affirmed the referee's decision that Martin was disqualified from receiving benefits because of misconduct related to the job. Martin appealed the decision to the circuit court which reversed and ordered unemployment benefits to be paid.

*727 LAW
The sole question before this Court is whether or not absenteeism from work due to alcoholism and treatment for alcoholism constitutes misconduct so as to disqualify the individual from receiving unemployment compensation benefits. The question is one of first impression in this state.
Miss. Code Ann. § 71-5-513A(1)(b) (1972), provides that disqualification for unemployment benefits results from misconduct, which is conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employees. Wheeler v. Arriola, 408 So.2d 1381 (Miss. 1982). In Wheeler, the court said:
Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertencies and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss. 1982). See also Shannon Engineering & Construction Co. v. Mississippi Employment Security Commission, 549 So.2d 446 (Miss. 1989). There, the employer was held to have the burden of proof by substantial, clear, and convincing evidence that a former employee's conduct warrants disqualification for benefits.
As stated, the referee found facts which are uncontradicted, and rendered the following opinion, adopted by the Board of Review, in affirming the denial of benefits:
§ 71-5-513A(1)(b) of the Law provides that an individual shall be disqualified for benefits for the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the Commission, and for each week thereafter until he has earned remuneration for personal services equal to not less than eight (8) times his weekly benefit amount as determined in each case.
The term "misconduct" as used in the Mississippi Employment Security Law is usually defined as an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standard of behavior which an employer has the right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.
It is the opinion of the Referee that claimant's actions which resulted in his separation from this employment do constitute misconduct as that term is used in the Law.
In reversing the Mississippi Employment Security Commission, the lower court stated that it was persuaded by the rationale expressed by the Court of Appeals for the Second Circuit of Louisiana in Craighead v. Administrator Dept. of Employment Security, 420 So.2d 688 (La. Ct. App. 1982). In that case, the unemployment claimant left work without his employer's permission to enter treatment for alcoholism. The employer and Louisiana Board of Review considered that as a voluntary quitting and unemployment benefits were denied. The Court of Appeals reversed and specifically pointed to the Louisiana Mental Health Law, LSA-R.S. 28:21, 1, which recognizes alcoholism as a "sickness" or "disease". The State of Mississippi recognizes alcoholism as a serious problem, but does not label it as "sickness" or "disease".
Miss. Code Ann. § 41-30-3(g) (1972), defines "alcoholic" as follows:
"Alcoholic" shall mean any person who chronically and habitually uses alcoholic beverages to the extent he has lost the power of self-control with respect to such beverages, or any person who, while chronically under the influence of alcoholic *728 beverages, endangers public morals, health, safety, or welfare.
The purpose of the unemployment insurance program is to help stabilize Mississippi's society by providing benefits to qualified persons who are unemployed through no fault of their own. The public policy and purpose of the program is stated in Miss. Code Ann. § 71-5-3 (1972) as follows:
As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden, which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.
We look to see how Mississippi laws deal with alcohol induced intoxication. Professionals, from attorneys, Miss. Code Ann. § 73-39-19(g) (1972), through veterinarians, Miss. Code Ann. § 73-39-19(b) (1972), may have their licenses suspended or revoked because of... . It may be grounds for a divorce, Miss. Code Ann. § 93-5-1 (1972), or loss of parental rights, Miss. Code Ann. § 93-15-103(3)(d)(i) (Supp. 1989). For those flying an aircraft, Miss. Code Ann. §§ 61-11-1 and 61-11-7 (1972), it may result in a fine of not more than $500 and/or not more than six (6) months imprisonment. For a drunken railroad engineer, Miss. Code Ann. § 97-25-13 (1972), it may lead to not less than one year, nor more than fifteen years, imprisonment. If a patient dies due to a doctor's negligence due to intoxication, Miss. Code Ann. § 97-3-39 (1972), he may be tried for manslaughter.
If the state can deal with its citzens in such manner, it appears that an employer should not be penalized by unemployment tax assessments for terminating an employee who misses work because of a drinking problem when it is conceded that the employer has a lawful right to so terminate that employee.
Jurisdictions in the United States have conflicting decisions on the question of alcoholism and unemployment benefits. The statutes of some states, as Louisiana, define alcoholism as a disease. Some courts have referred to alcoholism as a disease without medical proof. Medical authorities differ on the definition. Science has engaged in research and study, with the goal in mind, to establish that alcoholism results from genes inherited through the person's forebears. The record in the case-at-bar does not reflect any excuse, justification, or reason for Martin's alcoholism, except excessive drinking of alcohol.
In Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), the petitioners sought to continue receiving G.I. Bill benefits after the ten-year delimiting period on the grounds they were disabled by alcoholism. The V.A. found that, under its regulations defining "primary" alcoholism as willful misconduct, petitioners were not entitled to requested extensions. In affirming the V.A. decision, the U.S. Supreme Court noted that a substantial body of medical literature disagreed that alcoholism is a "disease" or that consumption of alcohol was wholly involuntary, and declined to decide that alcoholism is a "disease" that its victim cannot control.
Traynor is analogous to the case-at-bar, i.e., if the U.S. Supreme Court can refuse *729 to define alcoholism as a "disease" and affirm a V.A. decision that the petitioners there were guilty of "willful misconduct", then it follows that, if an unemployed benefits claimant is terminated for absenteeism due to alcoholism, his actions may be construed as "willful misconduct" and his claim for benefits denied.
In Egnew v. Kentucky Unemployment Insurance Commission, 687 S.W.2d 866 (1984), Egnew, the claimant, was employed as a dining room supervisor by Covington Haus. She had missed a great deal of work because of an alcohol problem and was discharged. Egnew reported on June 24, 1981, but was unable to work and had to be taken home by other employees. Although she was in touch with her employer, Egnew did not report to work again and on July 7, 1981, she was terminated. Her first claim for unemployment benefits was denied on the ground of misconduct but, on appeal, this disqualification was set aside by the referee's finding that she was not discharged for misconduct, since "alcoholism must be treated as a disease." When the employer appealed the referee's decision, the Commission adopted the referee's finding but also found:
The claimant had missed work on numerous occasions. Some absences were for compelling reasons. Others were caused by the alcoholism problem. She had been allowed to return to work on two to four occasions when off work for extended periods for that problem.
The last absence commenced on June 24, 1981. On July 11, she was hospitalized for about five days. After release and a few days of recuperation, she learned that the employer would not permit her to return to work. During the absence, she was in contact with the employer and expressed that she was of no use to the restaurant in her condition.
* * * * * *
The nature of a separation from employment is determined by examining how the separation actually occurred and which party caused the separation to take place. If the worker initiates the separation it is a quitting; if the employer does so it is a discharge. In this case the evidence clearly shows that the claimant's actions caused her to become unemployed. Although this Commission fully acknowledges that alcoholism is a disease, we cannot accept it as an excuse to totally relieve anyone of the responsibility for their actions. Therefore, claimant quit her job and without good cause attributable to her employment.
Id. at 867. The Circuit Court affirmed the Commission and Egnew appealed to the Kentucky Court of Appeals, which found that the Commission's finding that Egnew had "initiated the separation from employment" was supported by substantial evidence. In addressing Egnew's contention that an alcoholic should not be held strictly accountable for his actions, the Court said:
[W]e cannot say that the fact that an employee is an alcoholic precludes either the finding of a voluntary quitting or of misconduct. On the contrary, the use of alcohol affecting one's ability to work, such as appearing at work inebriated, would seem to disqualify the claimant from unemployment benefits.
Id. at 868.
In Ray v. Bivens, 562 So.2d 119 (Miss. Sup.Ct. 1990) the Mississippi Employment Security Commission denied unemployment benefits to the claimant, who was terminated for sleeping on the job. This Court affirmed. Some people either are addicted to sleep habits or cannot control them. Other people do things on the job which violate the employer's rules or which their employer cannot tolerate. Their termination would fall in the same category as the case-at-bar and Ray v. Bivens.
We are of the opinion that the decision of the Mississippi Employment Security Commission is supported by substantial evidence and Mississippi law. The judgment of the lower court is reversed, judgment is rendered here and the decision of the Commission is reinstated.
REVERSED AND RENDERED. THE DECISION OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS REINSTATED.
*730 HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
PRATHER, J., specially concurring, joined by DAN M. LEE, P.J., ROBERTSON, ANDERSON and BLASS, JJ.
PRATHER, Justice, Specially Concurring:
I agree that Martin's three consecutive unexcused absences constituted "misconduct" within Miss. Code Ann. § 71-5-513A(1)(b) (1972).
Greenville Mills acted in a reasonable manner before its patience dissipated  leading to termination of Martin's employment. For example, Martin was encouraged to seek counseling and treatment for his alcoholism; he was even provided over a month's leave of absence for this purpose. But a continuous, good-faith effort on Martin's part is not reflected in the record. In sum, Greenville Mills did not ignore the problem; it provided encouragement which Martin ultimately and essentially rebuffed. For this reason, I concur with the majority decision to reverse.
Of critical import, the majority opinion must not be construed as rendering any judgment about alcoholism and whether it is a disease or involves willful misconduct. Notably, numerous medical authorities (e.g., American Medical Association and American Psychiatric Association) contend that alcoholism is a disease which, in at least some circumstances, does not constitute willful misconduct. See generally Amicus Curiae Brief of the American Medical Association and the American Psychiatric Association, Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); Amicus Curiae Brief of the National Council on Alcoholism, Inc., Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). In addition, the majority notes that "[j]urisdictions in the United States have conflicting decisions on the [issue] of alcoholism and unemployment benefits." This and other related issues are not reached in the case sub judice and are left for disposition on another day. See Traynor, 485 U.S. at 552, 108 S.Ct. at 1383, 99 L.Ed.2d at 634 ("This litigation does not require the Court to decide whether alcoholism is a disease whose course its victims cannot control. It is not our role to resolve this medical issue on which the authorities remain sharply divided.").
DAN M. LEE, P.J., and ROBERTSON, ANDERSON and BLASS, JJ., join this opinion.