641 So.2d 1172 (1994)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION
v.
Joann PERCY.
No. 92-CC-01103.
Supreme Court of Mississippi.
August 11, 1994.
*1173 Jan D. Garrick, Jackson, for appellant.
No appellee Brief filed, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
DAN M. LEE, Presiding Justice, for the Court:
The appellant, Mississippi Employment Security Commission, appeals the September 28, 1992, decision of the Hinds County Circuit Court which awarded unemployment compensation benefits to Joann Percy. We reverse, determining that, as a matter of law, falsification of time cards constitutes misconduct within the meaning of Miss. Code Ann. § 71-5-513 (1989).

I.
The appellee, Joann Percy ("Percy"), was a licensed practical nurse employed by the Mississippi Methodist Rehabilitation Center for approximately three years. She was discharged from that employment on December 2, 1991, for falsifying her time cards. Thereafter, she filed a claim for unemployment compensation benefits with the Mississippi Employment Security Commission ("Commission"), on December 3, 1991.
A claims examiner for the Commission investigated the matter. After that investigation, the Commission notified Percy that it had determined that she had been discharged from the hospital for misconduct, therefore, her claim had been denied.
Percy promptly appealed the denial of her claim to the Commission and a hearing was conducted before a Commission Appeals Referee ("Referee") on February 24, 1992. As a result of evidence and testimony produced at that hearing, the Referee disqualified Percy from benefits under Miss. Code Ann. § 71-5-513A.(1)(b) (1989), finding that:
Claimant [Percy] was employed approximately three years as a licensed practical nurse with the Mississippi Methodist Rehabilitation Center of Jackson, Mississippi, ending on December 2, 1991, when she was discharged. The employer had become aware through their payroll office that an excessive number of claimant's time cards had been submitted with handwritten start times. The employer investigated this situation and saw that claimant's time cards had been signed in and initialled by either their charge nurse or the acting charge nurse. The supervisor confronted both individuals about the initials appearing on the time cards. Both stated that they had not initialled the claimant's time cards. The employer's policy requires an employee to have their time cards initialled by their supervisor if adjustments have been made. This policy is contained in both the employee's handbook and other policy information distributed to employees. The claimant admitted that she had failed to punch a time card in the morning because by doing so she would have been late to report to her floor. Therefore, she would *1174 sign herself in when she clocked out. Claimant has alleged that both the charge nurse and substitute charge nurse had given her permission to sign herself in and use their signatures as verification. When the employer's investigation determined that both individuals denied giving claimant permission to sign herself in, claimant was terminated.
According to Percy's testimony, she was paid by the hour and the hospital kept track of her time through her time card. She stated that she was required to be at her unit for "report" at 2:45 p.m., and if she stopped to clock in, it might take five to ten minutes extra to get to her duty station. As a consequence, in order for Percy to clock in and be at report at 2:45 p.m., she would have to arrive a little before that time.
However, she failed to arrive early enough to clock in and arrive at her duty station without being late. Therefore, Percy simply did not clock in. Instead, she stated that she proceeded directly to her duty station and would write in her arrival time later, whenever she clocked out. Additionally, Percy testified that, on the days that she entered her time by hand, she actually arrived at work between 2:30 p.m. and 2:45 p.m. Based upon that assertion, Percy contended that she had not falsified her time cards.
Percy appealed the Referee's decision to the Commission Board of Review. The Commission Board of Review adopted the Referee's findings and affirmed the Referee's decision, denying benefits to Percy. Dissatisfied, Percy appealed once again, placing her appeal before the Hinds County Circuit Court.
Just as the Commission Board of Review had previously done, the circuit court judge adopted the Referee's findings of fact, opining that the Commission's findings were supported by the evidence. Nevertheless, on September 28, 1992, the circuit court judge reversed the Commission and awarded unemployment compensation benefits to Percy.
Aggrieved, the Commission appealed to this Court, stating a single issue on appeal, as follows:
WHETHER FALSIFICATION OF EMPLOYEE TIME CARDS AMOUNTS TO MISCONDUCT UNDER THE MISSISSIPPI EMPLOYMENT SECURITY LAW SO AS TO REQUIRE REVERSAL OF THE LOWER COURT'S AWARD OF UNEMPLOYMENT BENEFITS TO PERCY.

II.
Our standard of review applied to appeals from the decisions of the Commission is limited. That standard is codified at Miss. Code Ann. § 71-5-531 (1989), which states, inter alia:
In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.
See also Booth v. Mississippi Employment Sec. Comm'n., 588 So.2d 422 (Miss. 1991); Mississippi Employment Sec. Comm'n. v. Flanagan, 585 So.2d 783 (Miss. 1991); Mississippi Employment Sec. Comm'n. v. Ballard, 252 Miss. 418, 174 So.2d 367 (1965); Mississippi Employment Sec. Comm'n. v. Blasingame, 237 Miss. 744, 116 So.2d 213 (1959).
Examining the record and applying that standard, we are compelled to conclude that the factual findings of the Commission Board of Review are supported by the evidence. However, unlike the circuit court judge, we conclude that Percy's actions constituted misconduct, disqualifying her from benefits in accordance with Miss. Code Ann. § 71-5-513A.(1)(b) (1989).
Since substantial evidence exists in the record in support of the findings adopted by the Commission, the dispositive issue is a question of law; whether Percy's actions of falsifying her time cards, thereby subverting the time card policy of the hospital, constituted misconduct which warranted her disqualification from unemployment compensation benefits.
Disqualification for unemployment benefits is authorized by statute. That provision states, inter alia:
An individual shall be disqualified for benefits:

*1175 ... .
For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the Commission, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.
Miss. Code Ann. § 71-5-513A.(1)(b) (1989) (emphasis added).
In a previous case in which the denial of unemployment benefits was affirmed on the basis that excessive absenteeism constituted misconduct, this Court reiterated the meaning of the term "misconduct", stating that:
Recently in Mississippi Employment Sec. Comm'n v. Martin, 568 So.2d 725 (Miss. 1990), this Court defined misconduct under the statute as:
[D]isqualification for unemployment benefits results from misconduct, which is conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employees.

Martin, 568 So.2d at 727 (citing Wheeler v. Arriola, 408 So.2d 1381 (Miss. 1982)). Put another way, "[m]isconduct imports conduct that reasonable and fairminded external observers would consider a wanton disregard of the employer's legitimate interests." Mississippi Employment Sec. Comm'n v. Phillips, 562 So.2d 115, 118 (Miss. 1990).
Barnett v. Mississippi Employment Sec. Comm'n, 583 So.2d 193, 196 (Miss. 1991). Therefore, whenever analyzing "misconduct", we not only assess violations of an employer's stated policy, but we also consider all action (or inaction) which could be expected of the employee, and which affects the interests of the employer, regardless of whether such actions are included within the stated policy.
Evidence was presented which demonstrated that employee time cards were the basic instrument utilized by the hospital in computing the wages due to its employees. Those time cards were the means by which the hospital verified the arrival and departure times of its employees, and, consequently, the amount of time worked by its hourly employees such as Percy. Therefore, the hospital required its employees to punch their time cards in compliance with the hospital's time clock regulations, and the procedure for authorizing handwritten entries, as well as the penalty of discharge from employment for noncompliance with those procedures, were stated in the hospital's employee handbook.
Percy's handwritten entries of her arrival times and her use of the charge nurse's, and substitute charge nurse's, initials for verification purposes was inapposite to the hospital's stated policies and procedures. Further, no great imagination is needed to conclude that it is in an employer's best interest to be able to verify the hours worked by its hourly-paid employees, as well as the arrival and departure times of those employees. The means for such verification utilized by the hospital consisted of: (a) time cards which were "stamped" by a time clock; and (b) the hospital's policy of granting certain supervisory nurses the authority to initial handwritten time cards under certain circumstances. Yet, Percy's refusal to conform with either of the hospital's verification methods subverted the ability of the hospital to verify her work hours.
At the time she was employed, Percy executed a document which stated that she had read, or would read, the employee handbook. That handbook stated that the clinical director, charge nurse, or acting charge nurse were the only persons who could authorize a handwritten time on an employee's time card, and that such authorization was accomplished by the authorized person "initialing" that time card within twenty-four hours. Therefore, since she had been made aware of them, the hospital could reasonably expect Percy to follow their stated policies.
Nevertheless, Percy admitted that she placed the initials of certain supervisory nurses on the time cards in question and that she did not tell those nurses that she had done so. That action by Percy was a breach *1176 of the stated policies and procedures of the hospital, just as her handwritten entry of arrival times constituted a violation of those policies and procedures. Percy's falsification of her time cards was an intentional attempt to receive a paycheck from the hospital while avoiding the verification of her arrival times and hours worked.

III.
It was in the hospital's best interests to insist on the capability of verifying and validating the hours worked by its hourly-paid employees such as Percy. Additionally, it was in the hospital's best interests to substantiate the arrival and departure times of nurses such as Percy. Confirmation that sufficient nursing personnel were present at any given time logically appears to be an important matter to an institution providing health care to persons in need of such care.
Therefore, Percy's falsification of her time cards constituted misconduct. She refused to follow either of the hospital's two procedures for verifying hours worked by an employee. Her actions were not the result of a "one-time" oversight, but comprised a continued practice for a period covering six weeks. During that time, Percy name numerous unauthorized entries, undermining the ability of the hospital to verify or validate the time which she arrived at work and the hours worked by her.
Accordingly, the circuit court judge erred by reversing the Commission's denial of unemployment compensation benefits to Percy. The judgment of the lower court is reversed and the decision of the Commission, disqualifying Percy from unemployment compensation benefits, is reinstated.
REVERSED AND RENDERED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.