## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CC-00450-SCT

*LILLIE B. HALBERT*

*v.*

*CITY OF COLUMBUS*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/07/97 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES D. EASLEY, JR. |
| ATTORNEY FOR APPELLEE: | THOMAS G. WALLACE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/8/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/29/98 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal by Lillie B. Halbert from an adverse ruling by the Circuit Court of Lowndes County which reversed the findings of the Mississippi Employment Security Commission (MESC) Board of Review which had allowed Halbert to receive unemployment benefits. The lower court held that Halbert had violated the City's established written substance abuse policy because she had been provided statutorily adequate notice to take a random drug test, but that she failed to submit to a urine sample within the three hour time frame required by the written policy. After thorough consideration, we hold that the circuit court was correct to reverse the MESC Board and we therefore affirm.

### FACTS

¶2. Lillie B. Halbert was employed by the City of Columbus as a truck driver in the sanitation department. The City adopted a substance abuse policy in 1992 and amended the policy on August 28, 1995. The policy required random selection drug testing at least once a month. The policy required testing of fifty percent of its employees on an annual basis. A three hour time frame within which to complete the drug test was required by the written policy. The policy further provided that

any employee who refuse to consent to a drug test would be subject to immediate termination of employment.

¶3. Linda Moore, the City's personnel manager sent a copy of the amended policy to all newly affected employees by including a copy in their payroll check envelopes on September 8, 1995. The City street department office manager posted the policy in several appropriate and conspicuous places in the Sanitation Department, including the time clock area and the employee bulletin board.

¶4. On December 29, 1995, Halbert was advised that she had been selected for random drug testing in accordance with the City's established written policy. She was provided with written notice and advised that she had three hours within which to complete drug testing. Halbert then requested and was allowed to speak with her attorney. She then requested and was allowed to visit her attorney's office. She returned to work with a letter from her attorney stating that he had advised Halbert not to take the test unless he was provided with a copy of the City's written drug testing policy. Her supervisor, Jim Hall, advised her that she could get a copy of the policy at the personnel department.

¶5. The City claims that Halbert did not submit to and complete drug testing within the prescribed time period of three hours. Halbert claims that Hall told her that she could go home, and she never refused to take the test.

¶6. A due process hearing was conducted on February 6, 1996, and Halbert was discharged due to failure to take the requisite random drug test within the prescribed time frame in violation of the City's Substance Abuse Policy. Halbert filed for unemployment benefits on February 7, 1996. A subsequent MESC investigation presented to the Claims Examiner determined that she had been discharged for misconduct related to her work and was thus disqualified from receiving unemployment benefits.

¶7. Halbert appealed to the Appeals Referee and at a hearing on April 2, 1996, the Referee reversed the findings of the Claims Examiner and reinstated Halbert's unemployment benefits.

¶8. The City appealed to the MESC requesting that the Referee's decision should be reversed, that Halbert was not entitled to any benefits, or in the alternative, that a re-hearing should be ordered. The MESC Board remanded to the Referee for the limited purpose of taking the testimony of Jim Hall. During a hearing on June 5, 1996 the Board affirmed the findings of the Referee, holding that Halbert had not refused to take a random drug test and was thus eligible for unemployment benefits.

¶9. The City appealed to the Circuit Court of Lowndes County on July 2, 1996. The court heard the matter on February 21, 1997 and held that the MESC decision was in error, reversed its finding and denied Halbert any unemployment benefits.

## DISCUSSION OF LAW

¶10. This Court's review of appeals from the decisions of the Commission is limited:

> Judicial review of an Employment Security Commission ruling is limited to determination of whether the decision is supported by substantial evidence.... This Court must review the record to determine whether there is substantial evidence to support the Board of Review's findings of fact, and further, whether, as a matter of law, the employee's actions constituted misconduct

disqualifying him from eligibility for unemployment compensation benefits.... Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev.1989) provides that an individual may be disqualified for unemployment benefits if he was discharged "for misconduct connected with his work." The employer has the burden of showing by "substantial, clear, and convincing evidence" that the former employee's conduct warrants disqualification from eligibility for benefits....

*City of Clarksdale v. Mississippi Employment Sec. Comm'n*, 699 So. 2d 578, 580 (Miss. 1997) (quoting *Foster v. Mississippi Employment Sec. Comm'n*, 632 So. 2d 926, 927 (Miss. 1994)). Further, with supporting evidence and in the absence of fraud, the factual findings of the Board of Review are conclusive and our review is limited to questions of law. Miss. Code Ann. § 71-5-531 (1995).

¶11. This Court previously has attempted to discern what constitutes "misconduct."

The Legislature has afforded no definition of misconduct, although quite apparently the statute imports an objective standard. The end of law is individual and hence societal adherence to external standards. It follows that questioned acts must be judged by like standards, even where expressed in language so open textured as "misconduct connected with his work." We have fleshed out the term in a series of cases beginning with *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). *See also Miss. Employment Sec. Commission v. McGlothin*, 556 So. 2d 324 (Miss.1990); *Shannon Engineering and Construction v. Miss. Employment Sec. Commission*, 549 So. 2d 446 (Miss. 1989); *Piggly Wiggly v. Miss. Employment Sec. Commission*, 465 So. 2d 1062 (Miss. 1985); *Miss. Employment Sec. Commission v. Borden, Inc.*, 451 So. 2d 222 (Miss. 1984). Misconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer's legitimate interests. Something more than mere negligence must be shown, although repeated neglect of an employer's interests may rise to the dignity of misconduct. *See Borden*, 451 So. 2d at 225.

*Allen v. Mississippi Employment Sec. Comm'n*, 639 So. 2d 904, 907 (Miss. 1994)(quoting *Mississippi Employment Sec. Comm'n v. Phillips*, 562 So. 2d 115, 118 (Miss. 1990)). We have also adopted the definition of "misconduct" articulated by the Wisconsin Supreme Court.

[T]he meaning of the term "misconduct," as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). Halbert argues that she did not refuse to take a random drug test, but rather, because she was not handed a copy of the City of Columbus's policy and simply went home as instructed to by Hall, that she is entitled to unemployment compensation benefits.

¶12. Employers such as the City of Columbus have a valid, legitimate, and necessary interest in knowing whether its employees are using drugs. City government employers must protect its citizens by insuring the best they can that a drug free employee is behind the wheel of city-owned vehicles.

¶13. The City adopted a substance abuse policy in 1992, pursuant to Miss. Code Ann. § 71-7-1, and amended the policy in 1995 to require all City employees to submit to random testing. This policy required that fifty percent of all employees would be subject to random testing on an annual basis. A neutral selection procedure was required whereby a random computer based number generator was matched to an employee's social security number.

¶14. On December 29, 1995, Halbert was one of eight employees randomly selected for testing on this occasion. There is no evidence within this record to even suggest that the selection of Halbert's name for testing was anything more than random computer selection in accordance with the City's policy. Even Halbert makes no such claim. Halbert, along with all other employees, was mailed a copy of the amended policy along with her payroll check on September 8, 1995 by Linda Moore, City of Columbus' personnel manager. It is also undisputed that the amendment was posted by the City at several appropriate and conspicuous places, including the time clock and employee bulletin board located in the Sanitation Department where Halbert worked.

¶15. Contrary to Halbert's claim, notice of the policy was clearly given to Halbert in advance of her random selection for testing. Halbert was advised by Jim Hall, her supervisor, that she had been randomly selected for testing. She was presented with a copy of her selection notice, which referenced possible termination for refusal to submit to testing. The notice also contained a provision requiring that she not exceed the allotted reporting time, which according to the policy was three hours. Halbert, upon being told she had been randomly selected, immediately asked to call her lawyer. She did so. Then she asked to visit her lawyer. Hall gave her a copy of her notice and she was allowed to visit her attorney Charles Easley. She returned one hour later with a letter from Easley which stated *inter alia* that he had advised Halbert not to take the drug test unless he was provided with a copy of the City's policy. Per state statute, Halbert was informed that a copy of the policy was available for her at the City's personnel office. Our statute clearly lists the personnel office as the place where employees can inspect the drug testing policy adopted by governmental employers. *See* Miss. Code Ann. § 71-7-3 (1995). The record reflects that neither Halbert or Easley ever inspected, or attempted to inspect, much less ask for, a copy of the policy at the City's personnel office. Easley's claim that Halbert was refused a copy of the policy is refuted by the record. The facts indicate that Halbert found a way to avoid taking the random drug test by simply shifting the blame to the City.

¶16. Halbert also maintains that contrary to refusing to take the test, she was simply told by Hall that she could go home. Hall denied making such a statement. Thus, the testimony is in obvious conflict regarding this subject. However, we note that Easley's letter indicates that the City's random selection of Halbert for drug testing that day had "[c]aused her extreme mental anguish. . . and that, I don't believe that she will be able to work the rest of the day due to the illness caused by you." It appears rather obvious that Halbert and her attorney decided that Halbert would not take the test, and that she would simply go home because of supposed mental anguish caused by the City's request to take a drug test.

¶17. Although Halbert may not have deliberately refused to take the random drug test, nonetheless,

she effectively avoided it and violated the City's written policy in the process by not taking the test within the prescribed three hour time frame. Thus, by her own actions and willful decisions made after consulting with her counsel, she successfully avoided the test.

¶18. The Circuit Court was correct in overturning the decision of the MESC by finding that Halbert violated the City's substance abuse policy by failing to submit to a urine sample within the prescribed three hour time frame. Given that Halbert clearly had more than sufficient notice of the policy, and considering her own actions of December 29, 1995, this could be considered willful, wanton disregard of the City's legitimate interests of being sure that its employees, especially truck drivers like Halbert, remain drug free while driving City vehicles upon the streets of Columbus.

¶19. Halbert's actions clearly could constitute misconduct which was work related. Our statutes also allow for a person to be disqualified for unemployment compensation if he was discharged for "misconduct" connected with employment. This Court, in *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) held that misconduct is "conduct evincing such wilful and wanton disregard of the employer's interest as is found in deliberate violations or disregards of standards of behavior which the employer has the right to expect from his employee." *Id.* This Court, in *Mississippi Employment Security Commission v. Percy*, 641 So. 2d 1172, 1175 (Miss. 1994), stated that "Put another way, 'misconduct imports conduct that reasonable and fairminded external observers would consider a wanton disregard of the employer's legitimate interests.'" *Id.* (Quoting *Barnett v. Mississippi Empoyment Sec. Comm'n*, 583 So. 2d 193, 196 (Miss. 1991). Although this Court has not decided a case directly on point with the facts of the case at bar, we have held that an employee would be disqualified from receiving unemployment benefits where the employee violated an employer's policy or otherwise failed to meet a required condition of employment. *See Richardson v. Mississippi Employment Security Commission*, 593 So. 2d 31 (Miss. 1992) (employee failed to maintain his Mississippi driver's license which was a required condition of employment and this amounted to misconduct as a matter of law); *Percy*, 641 So. 2d at 1173-74 (nurse's failure to punch time cards was violation of hospital policy and constituted misconduct thus she was disqualified from receiving unemployment benefits).

¶20. Other jurisdictions have addressed the exact question now posed to this Court. In *Doby v. Oklahoma Employment Security Commission,* 823 P. 2d 390, 392 (Okla. Ct. App. 1991), that court held that an employee's failure or refusal to take the random drug test required by his employer for employment, constituted misconduct sufficient to support the denial of unemployment compensation. Also, in *Texas Employment Commission v. Hughes Drilling Fluids*, 746 S.W. 2d 796 (Tex. Ct. App. 1988), that court held that the employee's failure to submit to the required drug test constituted misconduct. In *Moore v. Unemployment Compensation Board of Review*, 578 A.2d 606 (Pa. Commw. Ct. 1990), that court, in concluding that unemployment compensation could not be awarded to an employee guilty of misconduct, stated, "The violation of an established policy of the employer can, in and of itself, constitute willful misconduct. To prove willful misconduct by showing such violation of the policy, the employer must prove both the existence of the policy and the violation thereof by the employee." *Id.* at 608 (citations omitted).

¶21. The purpose for public employers establishing policies such as the one at issue here is clearly in furtherance of public agencies maintaining a drug free work place as expected public policy. Such a policy insures the safety of fellow employees as well as the public at large. An employer such as the

City" has the right to insist upon a work place which is free from drug impaired workers." ***Doby***, 823 P. 2d at 392. Here, the City had a right to adopt such a policy and to expect that its employees would comply with the policy. The City of Columbus proved the existence of the established written policy and the violation of the three hour time frame requirement by Halbert. Although she claims otherwise, the proof shows that Halbert had reasonable advance notice of the written policy, totally unlike employee Moore in the Pennsylvania case, in which that court found misconduct in spite of the employee Moore's claim that to his knowledge the employer had never requested any of its employees submit to a random drug test. ***Moore***, 578 A.2d at 609. We hold, as a matter of law that Halbert's willful and deliberate actions clearly constitute misconduct as contemplated by our case law as well as that of sister states. It is misconduct which any reasonable and fairminded person could determine should result in termination of employment of Halbert and for which she should not be entitled to unemployment benefits.

## CONCLUSION

¶22. We affirm the findings of the Circuit Court and hold that Halbert's failure to submit to random drug testing within the prescribed three hour time period constituted misconduct as a matter of law, thus she is not entitled to unemployment benefits.

¶23. **JUDGMENT AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶24. I disagree with the majority, apparently acting as finder of fact, in its determination that Lillie Halbert's failure to submit to a drug test until her attorney was provided with a copy of the City's drug testing policy constitutes willful misconduct, thereby precluding her eligibility for unemployment benefits. The evidence in the record supports the findings of the Mississippi Employment Security Commission (MESC) Board of Review that Halbert's actions did not constitute misconduct, willful or otherwise. Given our limited standard of review in these cases, the circuit court order should be reversed and the MESC's decision reinstated, allowing Halbert to receive unemployment benefits. Accordingly, I dissent.

I.

¶25. Halbert was employed by the City of Columbus as a truck driver for the sanitation department. On December 29, 1995, she was informed by her department head, Jim Hall, that she had been selected for random drug testing pursuant to the City's substance abuse policy, as amended August 28, 1995. Halbert was given notice that she would have three hours in which to complete the drug

test. After asking to speak with her lawyer, Halbert spoke with him on the telephone and with Hall's consent, left work to go to his office. Halbert returned to work with a letter from her attorney, requesting a copy of the drug testing policy. Hall told Halbert that he did not have a copy with him, but that it was available at the Personnel Office. The City now claims that Halbert refused to take the drug test. Halbert claims that Hall told her that she could go home.

## II.

¶26. The majority relies on several cases from other jurisdictions to support its conclusion that an employee's refusal to take a random drug test constitutes willful misconduct, rendering him ineligible for unemployment compensation. As distinguished from the case *sub judice,* in each of the cases cited, the employer had provided each employee with a copy of its drug testing policy as well as a form to sign indicating that the employee understood the policy and its ramifications upon his continued employment. In ***Doby v. Oklahoma Employment Security Comm'n***, 823 P.2d 390, 391 (Okla. Ct. App. 1991), the claimant signed a letter indicating his understanding that he could be terminated if he refused to submit to on the job drug testing. In ***Texas Employment Comm'n v. Hughes Drilling Fluids***, 746 S.W. 2d 796, 799 (Tex. Ct. App. 1988), the claimant had refused to sign a form acknowledging his understanding of and consenting to his employer's new random drug testing policy. Likewise, in ***Moore v. Unemployment Compensation Board of Review***, 578 A.2d 606 (Pa. Comm. Ct. 1990), the claimant had refused to sign a form consenting to random drug testing as a condition of his employment. His employer's policy provided that the tests were not supposed to be given without the employee's written consent; Moore further refused to give his written consent when asked to provide a urine sample for testing. Halbert, in contrast, was not provided with any acknowledgment of receipt of the policy or her understanding thereof. The cases cited by the majority, rather than supporting its position, tend to raise questions about whether the City of Columbus' policy was in compliance with any federal drug testing regulations, underscoring Halbert's skepticism. *See* ***Reames v. Department of Public Works, City of Patterson,*** 707 A.2d 1377 (N.J. Super. Ct. App. Div. 1988)(employee's refusal to submit to city's random drug testing for those employees driving commercial vehicles not misconduct when policy and practice not in conformance with state and federal regulations).

## III.

¶27. The Board found that Halbert did not willfully or deliberately refuse to take a drug test as instructed by the City. It further found that Halbert relied upon the advice of an attorney and did not willfully or deliberately fail or refuse to carry out the City's policies. Halbert notes the subtle distinction between refusing to take the random drug test and acting reasonably under the circumstances. In reality, the question presented to this Court is not whether refusal to submit to random drug testing is willful misconduct, but whether Halbert's failure to take the test, on the advice of counsel, constituted a reasonable action under the circumstances. Halbert argues that her conduct should fall within the "good faith errors in judgment or discretion" exception in ***Wheeler v. Arriola***, 408 So. 2d 1381, 1383 (Miss. 1982). The basis for this claim is her alleged suspicion that the request to take a drug test was not random, but retaliatory in nature because of grievances she had filed against the City of Columbus and Jim Hall for sexual harassment. Therefore, Halbert argues, her action was justified.

¶28. Misconduct is a question of fact for the Board of Review to resolve, and the Board's decision should not be disturbed by this Court if it is supported by substantial evidence. The record supports the Board's finding that Halbert merely acted in response to advice given to her by her attorney. There is a factual dispute as to whether Halbert was, or should have been, aware that random drug testing was a term and condition of her employment. While the City claims that notices were placed in the checks of employees and that notices of the random drug testing policy were posted, Halbert argues that she neither knew of the notices allegedly placed in her check nor did she ever see a posted notice regarding the drug testing policy. More importantly, however, when Halbert asked her supervisor for a copy of the random drug testing policy, he did not provide her one. Further, the City never produced any form signed by Halbert to show her compliance with or notice of the policy.

¶29. Under the statutorily prescribed standard of review, this Court is required to hold the Board's findings of fact to be conclusive. Since substantial evidence exists in the record in support of the findings adopted by the Commission, the dispositive issue is a question of law--whether Halbert's actions, namely her failure to take a random drug test, constituted misconduct within the context of the Unemployment Compensation Law. *See **Mississippi Employment Sec. Comm'n v. Percy***, 641 So. 2d 1172, 1174 (Miss. 1994). In agreement with the Appeals Referee, the Board found that Halbert did not refuse to take the drug test, but submitted a letter from her attorney seeking to receive a copy of the drug testing policy. The Board agreed that Halbert never received a copy of the policy and that her supervisor told her that she was free to leave and could go home. Thus, it was not unreasonable for Halbert to assume that she did not have to take the test at that time. This certainly creates enough ambiguity to eliminate the "willful" and "wanton" aspects of Halbert's alleged misconduct.

¶30. The underlying purpose of implementing employment security law in Mississippi is to protect those workers not permitted to continue employment through no fault of their own. ***Mississippi Employment Sec. Comm'n v. Gaines***, 580 So. 2d 1230, 1234 (Miss. 1991); ***Mississippi Employment Sec. Comm'n v. Fortenberry***, 193 So. 2d 142, 144 (Miss. 1966). When analyzing misconduct, this Court not only assesses violations of an employer's stated policy, but also considers all action or inaction which could be expected of the employee and which affects the interests of the employer, regardless of whether such actions are included within the stated policy. ***Percy***, 641 So. 2d at 1175.

¶31. Given Halbert's skepticism regarding the random drug test arising from her previous claims of sexual harassment, it would appear that her actions did not rise to the level of deliberate violations or disregard of the City's standards of behavior which might have been expected of an employee. Further, her actions cannot be construed as a wanton disregard of the City's interests. There is no evidence that Halbert was suspected of using drugs. There was no repeated failure or refusal to take the drug test. The facts seem to indicate that Halbert would have taken the test had she simply been provided with a copy of the drug policy. I would find that Halbert's actions, given the circumstances of her case, did not rise to the level of misconduct. At worst, her failure to take the drug test constitutes a good faith error in judgment as contemplated in ***Wheeler.***

IV.

¶32. Our review of appeals from decisions of the MESC is limited to determination of whether a

decision is supported by substantial evidence and whether, as a matter of law, an employee is precluded from eligibility for unemployment benefits on the basis of conduct or actions constituting misconduct. *City of Clarksdale v. Mississippi Employment Sec. Comm'n*, 699 So. 2d 578, 580 (Miss. 1997)(quoting *Foster v. Mississippi Employment Sec. Comm'n*, 632 So. 2d 926, 927 (Miss. 1994)). Where there is evidence supporting the decision, and in the absence of fraud, the factual findings of the Board of Review are conclusive and our review is limited to questions of law. Miss. Code Ann. § 71-5-531 (1995). The City of Columbus has a legitimate interest in knowing whether its employees, especially truck drivers, are abusing drugs. Were this Court the finder of fact, we might reach a conclusion contrary to that of the Board. However, mindful of our narrow standard of review, substantial evidence in the record supports the finding by the Board of Review that Halbert's actions did not constitute willful misconduct. The burden is not on this Court, but on the employer to show by "substantial, clear and convincing evidence" that the employee's actions bar him from unemployment benefits. *City of Clarksdale,* 699 So. 2d at 580. Moreover, an employee's failure to take a random drug test does not always constitute willful misconduct as a matter of law. Specifically, Halbert's actions in this case did not rise to that level. Accordingly, I dissent.

**SULLIVAN, P.J., BANKS AND WALLER, JJ., JOIN THIS OPINION.**