CARLTON, J.,
for the Court:
¶ 1. The Jackson County Board of Supervisors (Board of Supervisors) appeals the judgment of the Jackson County Circuit Court affirming the Mississippi Department of Employment Security (MDES) Board of Review’s decision that June Seaman was entitled to unemployment benefits. Finding reversible error, we reverse and render.
FACTS
¶ 2. In August 2009, the Board of Supervisors terminated Seaman from her employment for the misconduct of falsifying her time sheets from 2008 through 2009.[1] Before this termination, the Board of Supervisors conducted an internal investigation, where Janet Krebs, the director of human resources for Jackson County, investigated information submitted on Seaman’s time sheets. Krebs determined this information appeared incredible on its face. During this internal investigation by the Board of Supervisors, Krebs interviewed various employees, including Seaman and Seaman’s supervisor, Eddie Russell.
¶ 3. The record reflects Seaman worked full-time for Jackson County as an administrative assistant at the County Civic Center, but she also worked part-time (as needed) as a worker for the Jackson County Fair Association.[2] Jackson County paid Seaman for her work in both positions every two weeks in a single check. Since Seaman worked full-time as an administrative assistant for the Civic Center, she had only after-work hours and weekends to perform her part-time duties for the Fair Association.
¶4. Shortly after her termination, Seaman filed for unemployment benefits with the MDES. The MDES’s claims examiner investigated the matter and found that the Board of Supervisors failed to prove that it terminated Seaman for “misconduct.” The claims examiner then awarded benefits. The Board of Supervisors appealed, and the administrative-law judge (ALJ) held a telephonic hearing.
*199 ¶ 5. During the hearing, the ALJ heard testimony from: Seaman; Belinda Lamey, the payroll clerk for Jackson County; Allen Ray Smith, president of the Jackson County Fair Board; Jim Hart, director of the fairgrounds for Jackson County; and Krebs. After the hearing, the ALJ determined that the Board of Supervisors had terminated Seaman for falsifying time sheets.
¶ 6. However, the ALJ found that the Board of Supervisors failed to meet its burden of proving disqualifying conduct under Mississippi Code Annotated section Yl — 5—513(A)(1)(c) (Rev.2011). In that regard, the ALJ’s decision reflected that she disagreed with the Board of Supervisors that Seaman should be terminated for misconduct stemming from falsifying her time sheets, and the ALJ acknowledged Seaman’s years of employment and contributions. The ALJ also found that the Board of Supervisors’ case rested upon speculation, and the ALJ affirmed the decision of the claims examiner awarding benefits to Seaman. The Board of Supervisors appealed to the MDES Board of Review (Board of Review), which affirmed, adopting the ALJ’s findings and opinion.
¶ 7. The Board of Supervisors then appealed to the Circuit Court of Jackson County. Thereafter, Circuit Judge Jerry 0. Terry Sr., who was specially appointed, entered his order affirming the decision of the MDES. The parties filed a “Joint Motion to Amend and Reconsider the Record” in order to admit documents into evidence submitted by the Board of Supervisors at the hearing before the ALJ. Upon this joint motion, the circuit court reconsidered its prior order and again affirmed the decision of the Board of Review.
¶ 8. The Board of Supervisors now appeals, arguing that the decision of the circuit judge affirming the decision of the Board of Review to grant unemployment compensation to Seaman was not supported by substantial evidence, and that the decision was arbitrary and capricious. After reviewing the record, we do not find substantial evidence supporting the circuit court’s judgment.[3] Additionally, the decisions of the circuit court and Board of Review were arbitrary and capricious since the evidence in the record clearly supports the Board of Supervisors’ decision to terminate Seaman for misconduct. Finding reversible error, we reverse and render the judgment of the circuit court.[4]
DISCUSSION
¶ 9. The Board of Supervisors argues that the decision of the Board of Review was not supported by substantial evidence, and was therefore arbitrary and capricious. Specifically, the Board of Supervisors argues that the record reveals that the decision that Seaman was not fired for “misconduct” lacked support by substantial evidence. The Board of Supervisors contends that substantial evidence was presented supporting a finding that the Board of Supervisors fired Seaman for very serious misconduct involving the falsification of her hours worked. The Board of Supervisors also argues that if the record reveals that the Board of Review’s decision was not supported by substantial evidence, then it necessarily follows that the decision was arbitrary and capricious. The Board of Supervisors asserts that the Board of Review disregarded the evidence in the record of the case. The Board of Supervisors contends that as a result, the *200 Board of Review and circuit court entered arbitrary judgments.
¶ 10. Our limited standard of review for administrative appeals is well established. This Court will not disturb the administrative agency’s findings unless the order of the agency: “1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates [the claimant’s constitutional rights.” Tillmon v. Miss. Dep’t of Emp’t Sec., 996 So.2d 825, 828 (¶ 9) (Miss.Ct.App.2008) (quoting Sprouse v. Miss. Emp’t Sec. Comm’n, 639 So.2d 901, 902 (Miss.1994)). Furthermore, “a rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise.” Id.[5]
¶ 11. “Under Mississippi’s Unemployment Compensation Law, a person is disqualified from receiving benefits if he is discharged from employment for misconduct connected with his work.” Hux v. Miss. Emp’t Sec. Comm’n, 749 So.2d 1225, 1227 (¶ 10) (Miss.Ct.App.1999); see Miss. Code Ann. § 71-5-513(A)(l)(b) (Rev.2011) (“[A]n individual shall be disqualified for [unemployment] benefits ... for misconduct connected with his work if so found by the department.”); see also Miss.Code Ann. § 71-5-511 (Rev.2011) (addressing eligibility conditions to receive unemployment benefits). The term “misconduct” has been defined by the Mississippi Supreme Court in Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982):
The meaning of the term “misconduct,” as used in the unemployment compensation statute, [is] conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered “misconduct” within the meaning of the statute.
Pendleton v. Miss. Dep’t Emp’t Sec., 86 So.3d 284, 285 (¶ 6) (Miss.Ct.App.2012) (citing Wheeler, 408 So.2d at 1383). The Wheeler court explained that work-connected negligence, in effect, could constitute misconduct when it is “of such degree, or recurrence ... as to manifest culpability, wrongful intent or evil design ... [or] an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations.” Wheeler, 408 So.2d at 1383.
¶ 12. Additionally, the Legslature has placed the burden of proving misconduct on the employer. Miss.Code Ann. § 71-5-513(A)(l)(c) (“The burden of proof of good cause for leaving work shall be on the claimant, and the burden of proof of misconduct shall be on the employer.”). The Mississippi Supreme Court has clarified that the employer bears the burden of showing that the employee’s conduct warrants disqualification from eligbility for benefits by “substantial, clear, and convincing evidence.” Foster v. Miss. Emp’t *201 Sec. Comm’n, 632 So.2d 926, 927 (Miss.1994).[6] The record in this case reflects facts clearly and convincingly establishing Seaman’s misconduct that resulted in her termination. We now turn to review the record relative to our standard of review.
¶ 13. As stated, Seaman held a full-time position requiring forty-hour work weeks for Jackson County at the Civic Center, but Seaman also worked in a part-time capacity, as needed, as a worker for the Fair Association.[7] Jackson County paid Seaman for her work in both positions every two weeks in a single check. Seaman’s time sheets from 2008 through 2009 reflected that she routinely claimed to work thirty to forty hours per week in her part-time job with the Fair Association, in addition to the forty hours per week that she worked for the Civic Center.
¶ 14. Krebs, the human resources director for Jackson County, testified that the human-resources division became suspicious of the number of hours Seaman reported working for the Fair Association, explaining that the division found the number of hours Seaman submitted to be incredible. The ALJ’s order reflects that as a result, in late 2008, Jackson County hired a private investigator to follow Seaman to see if her hours were being recorded accurately. After conducting his investigation, the investigator ultimately noted some possible discrepancies, but the investigator did not reach a firm conclusion that Seaman had falsified her time sheets. The record reflects that the Board of Supervisors took no further action at that time.
¶ 15. Later, however, on July 21, 2009, Krebs again questioned Seaman and other employees, this time inquiring about the signatures on Seaman’s time sheets. Seaman denied falsifying her supervisor’s signature on the time sheet. Krebs suspended Seaman on July 21, 2009, in order to conduct another investigation into the amount of hours Seaman had submitted as well as the signatures on her time sheets,[8] which ultimately led to Seaman’s termination. During this internal investigation, Russell (Seaman’s supervisor) informed Krebs that Seaman had signed Russell’s signature on her (Seaman’s) time sheets.Russell also explained that Seaman asked him to lie about his falsified signature on her time sheet.
¶ 16. Lamey, the county payroll specialist, testified before the ALJ, explaining “[t]here were a couple of times that it didn’t make sense that an employee could work that many hours in any day and also weekends.” Lamey agreed that the number of hours Seaman submitted on her time sheets raised “red flags.”
¶ 17. During the hearing before the ALJ, Allen Smith, president of the Jackson County Fair Board, testified regarding Seaman’s time sheets from the period at issue, 2008 through 2009. The record reflects that Seaman’s time sheet from the period of August 22, 2008, through September 4, 2008, reflected that she worked sixty-nine hours for the Fair Association while also holding a full-time position for the Civic Center, requiring forty-hour work weeks. When questioned about this specific time sheet, Smith stated that during that time period, only minimal work for Seaman existed at the Fair Association, *202 “five to ten hours at the max.” Smith testified that by his estimations, Seaman’s pre-fair work hours for the months of August, September, and October should amount to twenty to thirty hours total for all three months combined. Smith further explained that Seaman’s hours for the month of August could be as few as five to ten hours for a two-week pay period. Smith testified that in November, Seaman’s hours may increase to fifteen to twenty hours for a pay period. He also estimated that her hours during the months of January, February, and March should amount to fifteen to twenty hours' total for all three months, with only five to ten hours of work for the month of April. Smith testified that Seaman’s position would not require her to work any hours during the months of December, May, June, or July.
¶ 18. As stated, the time sheets reasonably raised the attention of the Board of Supervisors due to the enormity of hours Seaman claimed she worked at the Fair Association while still employed in a full-time [9] capacity at the Civic Center, in light of the normal amount of hours required to fulfill her job at the Fair Association.
¶ 19. Regarding the falsification of the signatures on her time sheets, Seaman testified in the telephonic hearing before the ALJ that she was given permission by her supervisor, Russell, to sign his name to her time sheets. However, Seaman later admitted to the ALJ that she never checked with Russell about the amount of hours she worked. Further, Krebs testified before the ALJ that during her investigation into the matter for the Board of Supervisors, Russell informed her that he did not sign Seaman’s time sheets or approve her hours as accurate. Krebs testified that during her internal inquiry before terminating Seaman, Russell explained that Seaman asked him to lie to corroborate her story that he signed her time sheets. Our review of the record also shows that Seaman acknowledged receipt of the Jackson County employee handbook, and that the handbook contains a provision stating that falsifying time sheets or records constitutes a terminal offense. Precedent also recognizes that the falsification of time sheets may constitute misconduct supporting termination. See Miss. Emp’t Sec. Comm’n v. Percy, 641 So.2d 1172, 1174-75 (Miss.1994).
¶ 20. In Percy, 641 So.2d at 1175, Joann Percy was similarly terminated for signing her supervisor’s initials to her time card. Like the case before us, the supreme court acknowledged that Percy’s actions “were not the result of a ‘one-time’ oversight, but comprised a continued practice for a period covering six weeks.” Id. The supreme court held that Percy’s falsification of her time cards “was an intentional attempt to receive a paycheck” while avoiding the verification of the hours she actually worked. Id. at 1176. Recognizing that our supreme court has found that the “falsification of ... time cards constitute^] misconduct,” we find that Seaman’s actions of falsifying her time sheets indeed constitute misconduct. Id.
¶ 21. After reviewing the record, we find the record lacks substantial evidence to support the Board of Review’s decision. As stated, the findings below must be supported by substantial evidence. Tillmon, 996 So.2d at 828 (¶ 9). We find that the Board of Review arbitrarily found that the Board of Supervisors’ termination of Seaman was based upon speculation, since the *203 testimony in the record shows that the Board of Supervisors based its decision upon the following clear and convincing facts and evidence: Seaman’s time sheets reflecting an incredible and improbable number of hours worked by Seaman in her part-time job in light of her full-time employment elsewhere; Russell’s statement to Krebs that Seaman asked him to lie about her time sheet; the employee handbook’s definition of terminal offenses; and Seaman’s admission to the ALJ that she never checked with her supervisor regarding the number of hours she submitted on her time sheets. The improbable amount of hours reflected on her time sheets, on its face, provides evidence supporting Seaman’s termination for misconduct, and, as noted above, the record shows Seaman asked her supervisor to lie to corroborate her false testimony that he approved her time sheets. See Miss. Emp’t Sec. Comm’n v. Claiborne, 872 So.2d 698, 700 (¶ 6) (Miss.Ct.App.2004) (stating that the actual facts surrounding the termination control whether the employee was terminated for misconduct). The evidence, taken together, amounts to clear and convincing evidence supporting the termination of Seaman for misconduct by the Board of Supervisors. Furthermore, the evidence shows that the Board of Review and circuit court arbitrarily and erroneously found that the Board of Supervisors based its decision to terminate Seaman’s employment on speculation and mere circumstantial evidence. See generally McAdory v. McAdory, 608 So.2d 695, 699 (Miss.1992) (Circumstantial evidence may indeed rise to the level of clear and convincing. A party seeking a divorce on the ground of adultery must prove the elements of the offending conduct by clear and convincing evidence; however, the party may rely on circumstantial evidence as proof of his allegations.).
¶ 22. As acknowledged, the ALJ, Board of Review, and the circuit court found that Seaman’s actions were not misconduct, stating in their respective orders that the Board of Supervisors based its termination of Seaman on speculation and circumstantial evidence. However, the record contains direct evidence that Seaman’s actions were misconduct, including the time sheets reflecting improbable hours as well as testimony of Seaman’s supervisor that Seaman asked him to lie to corroborate her story about her time sheets. See Miss. Emp’t Sec. Comm’n v. Harris, 672 So.2d 739, 743 (Miss.1996) (finding a teacher’s action of showing an R-rated movie constituted misconduct and reversing the circuit court’s award of unemployment benefits).
¶ 23. The record thus fails to support the decision of the Board of Review or the circuit court that Seaman’s actions failed to constitute misconduct. Rather, the evidence in the record clearly and convincingly reflects substantial evidence supporting Seaman’s termination for misconduct. Johnson v. Miss. Emp’t Sec. Comm’n, 761 So.2d 861, 866-67 (¶¶ 19-22) (Miss.2000). Therefore, the Board of Review and circuit court arbitrarily and capriciously found Seaman’s termination for misconduct was based on mere speculation. Accordingly, we reverse and render the circuit court’s judgment.
¶ 24. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING AND GRIFFIS, P.JJ., AND FAIR, J.

. Jackson County asserts that Seaman worked full-time for Jackson County at the County Civic Center but also worked part-time as needed as a worker for the Jackson County Fair Association.

. Seaman’s testimony before the ALJ reflects that the Fair Association employed her for twenty-six years, but she changed positions over the years.

. See Tillmon v. Miss. Dep’t of Emp’t Sec., 996 So.2d 825, 828 (¶ 9) (Miss.Ct.App.2008).

. See URCCC 5.03 (standard of review for reviewing the order or judgment of an administrative agency).

. See Miss.Code Ann. § 71-5-525 (Rev.2011) (outlining the procedure for the appeal of claims).

. Austin v. Miss. Dep’t of Emp’t Sec., 976 So.2d 969, 971 (¶ 12) (Miss.Ct.App.2008).

. Seaman's testimony before the ALJ reflects that the Fair Association employed her for twenty-six years, but she changed positions over the years.

.This second investigation occurred nearly a year after the Board of Supervisors hired a private investigator to investigate whether Seaman accurately recorded the hours on her time sheet.

. The record reflects that Seaman worked forty hours per week for the Civic Center in a full-time capacity.