13 So.3d 866 (2009)
MISSISSIPPI DEPARTMENT EMPLOYMENT SECURITY, Appellant
v.
Raymond CLARK, Appellee.
No. 2008-CC-00582-COA.
Court of Appeals of Mississippi.
July 21, 2009.
*868 Leanne Franklin Brady, attorney for appellant.
Raymond Clark, Appellee, pro se.
EN BANC.
ROBERTS, J., for the Court.
¶ 1. The Mississippi Department of Employment Security (MDES),[1] appeals from a judgment of the Circuit Court of Leake County, Mississippi that reversed the decision of the MDES Board of Review (Board of Review), which denied unemployment benefits to Raymond Clark. The MDES contends that the circuit court erred by finding that Clark's employer, Peco Foods of Sebastopol, Mississippi (Employer), failed to prove by substantial evidence that Clark committed disqualifying misconduct pursuant to Mississippi Code Annotated section 71-5-513(A)(1)(b) (Supp.2008), when he reported to work under the influence of alcohol, thereby violating the Employer's zero-tolerance policy. After determining that there was substantial evidence to support the findings of fact and opinion of the Administrative Law Judge (ALJ), which was adopted by the Board of Review, we reverse the judgment of the circuit court and reinstate the decision of the Board of Review.

FACTS AND PROCEDURAL HISTORY
¶ 2. From July 5, 2006, until August 14, 2007, Clark worked for the Employer as a maintenance technician. He was terminated on August 14, 2007, for reporting to work under the influence of alcohol, which was in violation of the Employer's zero-tolerance policy prohibiting any employee from reporting to work under the influence of any intoxicating substance. Clark filed a claim for unemployment benefits on August 20, 2007, and he and a representative for his Employer were interviewed by a claims examiner. The Employer's representative told the claims examiner that the Employer had a reasonable suspicion that Clark had reported to work under the influence of alcohol, so the Employer, in accordance with the company's policy, administered an alcohol and drug test on Clark. The Employer's representative told the claims examiner that Clark failed the alcohol test, but he passed the drug test. Clark told the claims examiner that he was terminated because of his "medical history and accus[ation] of being intoxicated at work." He did admit to the claims examiner that he "had [drunk] a few beers[,] maybe 3 hours prior to [going] to work." The claims examiner determined that Clark's actions of reporting to work under the influence of alcohol amounted to misconduct connected to work. Therefore, Clark was disqualified from receiving unemployment benefits.
¶ 3. Clark appealed the decision, and a telephonic hearing was held before the ALJ on October 27, 2007. Clark and William Gully, the personnel director for the Employer, participated in the hearing. Gully testified that the Employer had a policy that called for a "reasonable suspicion *869 test" if there was an employee at work who appeared to be under the influence of alcohol. The company policy required that two different management personnel observe the employee and fill out a checklist related to characteristics such as the smell of alcohol or the employee acting "differently." Gully testified that, after management smelled alcohol on Clark, Clark submitted to a drug and alcohol test, which revealed elevated alcohol levels in Clark's body. Gully testified that these results were in direct violation of the Employer's behavior guidelines and substance-abuse policy. He also testified that every employee at Peco Foods gets an employee handbook, which contains the zero-tolerance policy. He also testified that they are required to sign a form, which states the date they received the policy, and he stated that the employee gets a copy of that form. A copy of the Employer's policy was presented at the hearing, and it states, in pertinent part, that:
The intention of this policy is to provide a safe, productive work place free from the influence of prohibited chemical substances. To accomplish this[,] disciplinary action may be necessary. Therefore, any employee found to be in violation of this policy will be subject to appropriate disciplinary action, including discharge.
....
The company may also include the periodic testing of the blood and/or urine samples to detect the use or presence of alcohol, illegal drugs, and other prohibited substances.
....
Any employee who, as a result of testing, is found to have indefinable levels of illegal drugs, alcohol or other prohibited substances in his or her system, regardless of when or where these substances entered his or her system, will be considered in violation of this policy and subject to disciplinary action, usually immediate discharge.

(Emphasis added). In other words, the Employer had a zero-tolerance policy for allowing any employee to arrive at work, or be at work, under the influence of any intoxicating substance.
¶ 4. Clark testified that he was not given a copy of the policy. However, when asked by the ALJ if he knew, before the incident, what was the Employer's policy regarding the use of alcohol and drugs, he stated that he was aware the Employer had such a policy. To be precise, Clark stated that "[he] didn't know exactly what [its] policy was, but he was pretty sure that [it][had] one." Refuting Clark's testimony, Gully testified that he possessed a signed copy of Clark's receipt of the company policy. Gully testified that all new hires received a copy of the employee handbook which contained the company's policy on substance abuse. Clark testified before the ALJ that he had drunk about four or five twelve ounce beers on the evening before he was tested at work. However, this statement was contradictory to the statement he made to the claims examiner, just days after being discharged from his employment, wherein he stated that he had consumed maybe three beers before going to work that day.
¶ 5. Clark takes issue with the fact that the Employer did not provide him with a copy of the laboratory report reflecting his alcohol levels. Gully testified, and Clark admitted, that he did show Clark the results, but he was unable to give Clark a copy of the laboratory report due to the company's policy and procedure. Clark was instructed that he should request a copy of the laboratory results directly from the laboratory at Laird Hospital in Union, Mississippi.
*870 ¶ 6. The ALJ determined that, although the Employer should have provided documentation of the test results which showed the level of alcohol detected, Clark's admission to consuming the alcohol before work attested to the fact that the claimant violated the Employer's zero-tolerance policy. Finding that the Employer had discharged Clark for misconduct connected to work, the ALJ affirmed the decision of the claims examiner.
¶ 7. Clark filed an appeal of the ALJ's decision to the Board of Review on November 6, 2007, and the Board of Review adopted the findings of fact and opinion of the ALJ. Clark filed an appeal to the Circuit Court of Leake County, and the circuit court reversed the decision of the Board of Review. The circuit court stated that the decision was arbitrary and capricious, and then it made the conclusory statement that "there was not substantial evidence in the record to support [the Board of Review's] decision." Aggrieved, MDES now appeals to this Court.

STANDARD OF REVIEW
¶ 8. The standard of review relating to the findings of the Board of Review is well settled:
The standard of review of a trial court's decision to affirm or deny the [MDES] Board of Review's findings and decision is abuse of discretion. Further, section 71-5-531 of the Mississippi Code provides that in any judicial proceedings to review a [MDES] Board of Review decision, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. Therefore, if the [MDES] Board of Review's decision was supported by substantial evidence and was not arbitrary or capricious, the circuit court and this Court must affirm that decision. Substantial evidence has been defined by the Mississippi Supreme Court to be such relevant evidence as reasonable minds might accept as adequate to support a conclusion or to put it simply, more than a `mere scintilla' of evidence. An act is arbitrary and capricious when done without reason, ... implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles. If an agency's decision is found to be unsupported by substantial evidence, it necessarily follows that the decision is arbitrary and capricious.
Howell v. Miss. Employment Sec. Comm'n, 906 So.2d 766, 769(¶ 7) (Miss.Ct. App.2004) (internal citations and quotations omitted).

ANALYSIS OF THE ISSUE
¶ 9. First, we note that Clark has not filed a brief with this Court. "We are not obligated `to look to the record to form an opinion against the appellant where the appellee has [not] filed ... [a] brief outlining his opposing position.'" Miss. Employment Sec. Comm'n. v. Wesley, 928 So.2d 934, 937(¶ 11) (Miss.Ct.App.2006) (citation omitted). "This Court has long held that an appellee's failure `to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and the brief of the appealing party, that there was no error.'" Id. (citation omitted). After carefully evaluating the entire record and the brief of the Appellant, we are unable to say with confidence that the trial court did not err. Therefore, we are constrained to conclude that Clark's failure to file a brief will be taken as a confession of error by Clark.
¶ 10. The MDES argues that the circuit court erred when it found that the *871 Board of Review's decision was not supported by substantial evidence. The circuit court, in its order reversing the decision of the Board of Review, noted that the "Administrative Appeals Officer found that the employer had discharged the claimant for violation of the employer's alcohol policy." The circuit judge opined that "[t]he record of this case present[ed] no substantial evidence to support [the] finding." The circuit judge then found "that [Clark] was discharged for conduct that [did] not amount to misconduct under Miss.Code Ann. [§] 71-5-513(A)(1)(b); .... therefore, [Clark] should not be disqualified from receiving unemployment benefits under the Unemployment Compensation statute." We disagree.
¶ 11. "[W]e have held that an employee would be disqualified from receiving unemployment benefits where the employee violated an employer's policy or otherwise failed to meet a required condition of employment." Halbert v. City of Columbus, 722 So.2d 522, 526-27(¶ 19) (Miss.1998) (citation omitted). "The violation of an established policy of the employer can, in and of itself, constitute willful misconduct. To prove willful misconduct by showing such violation of the policy, the employer must prove both the existence of the policy and the violation thereof by the employee." Id. at 527(¶ 20) (citation omitted). After hearing the testimony relating to the facts presented above, the ALJ determined that the Employer had proven the existence of such a policy and that Clark had indeed violated the policy. The ALJ noted that Clark was "discharged for reporting to work under the influence of alcohol, and that his actions of consuming the amount of alcohol ... before reporting to work showed a disregard to the [E]mployer's interest." The ALJ went on to state that "[Clark's] admission to consuming the alcohol attest[ed] to the fact that [he had] violated the [E]mployer's zero-tolerance policy [relating to alcohol or other substance abuse]." After reviewing the record, we find that the ALJ's decision was supported by substantial evidence.
¶ 12. During the hearing, Gully testified that the company had a zero-tolerance policy in place prior to Clark's alcohol-related incident at work, and all employees were given a copy of the policy during their new hire orientation. He also testified that he had a copy of an acknowledgment, which was signed by Clark, wherein Clark acknowledged that he had received the employee handbook. When asked by the ALJ why he had not submitted the acknowledgment as an exhibit at the hearing, Gully testified that:
He did not think that [Clark] would not remember receiving that because that was part of all of his new hire orientation[s]. Every employee at Peco Foods gets an employee handbook with this information in it. And[,] they sign a form in their file saying the date they received it and get a copy of it.
Despite Clark's testimony that he did not have a copy of the handbook, he did testify that he knew that there was a company policy in place concerning use of intoxicating substances. There was substantial evidence before the ALJ that there was a company policy and that Clark was aware of it.
¶ 13. Gully testified that, in accordance with the Employer's company policy and the employee handbook, Clark was required to submit to a drug and alcohol test after it was determined that he had arrived at work smelling of alcohol. Gully testified that Clark's alcohol level was found to be 106.3 milligrams, which was in violation of the company's policy. Gully also testified that the test was administered by a nurse in the Employer's first-aid office at its facility, and the company *872 had a chain of custody procedure in place regarding the transportation of the employee's samples to the testing laboratory. He testified that the company administered these tests on various employees on a daily basis. Although Clark testified that Gully would not give him a copy of the printed laboratory results, both he and Gully testified that Clark was shown the results.[2] Clark testified that it was against company policy and procedure to release medical or personnel records from the employee's personnel files to an employee because they were company property. However, Gully testified that he told Clark, on multiple occasions, that Clark could request a copy of the laboratory report from the testing hospital. Clark did not acquire a copy of the report, nor did he or Gully present a copy of the laboratory report to the ALJ. Yet, Gully told the ALJ that he had a copy of the results, and he could submit them to the ALJ, if he had a medical-records release from Clark.
¶ 14. As stated, Clark gave conflicting statements to the ALJ and the claims examiner. Clark told the claims examiner that he had drunk a few beers several hours before reporting to work, but after being denied benefits for disqualifying misconduct, he later changed his story and told the ALJ that he drank the beers the night before work. Disputing the test results, during the telephonic hearing before the ALJ, Clark asked Gully if Gully had falsified his laboratory report. Gully responded that he had no reason to lie and that the laboratory report was available to Clark. Clark also told the ALJ that the company did not terminate his employment because of alcohol consumption. Rather, he believed that it was because he could not wear a tool belt due to a back problem and because he had been written up for "personality problems." Clark has produced no evidence to support his self-serving accusations. As a result, they are simply that, accusations. We are mindful that, when reviewing the findings and decisions of administrative agencies, our standard of review is very deferential. "A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." Curtis v. Miss. Employment Sec. Comm'n., 878 So.2d 1094, 1094(¶ 2) (Miss.Ct.App.2004) (quoting Allen v. Miss. Employment Sec. Comm'n., 639 So.2d 904, 906 (Miss.1994)) (emphasis added). We find that Clark did not meet "his burden of proving otherwise" before the circuit court.
¶ 15. The circuit judge correctly recognized that it was the employer that bore the burden of showing that the employee's conduct warranted disqualification from eligibility for benefits by substantial, clear and convincing evidence,[3] but the judge did not offer any opinion about what substantial evidence was missing from the record. Although we can only offer conjecture about what the circuit judge's thoughts were, perhaps he *873 took issue with the Employer's failure to place Clark's laboratory results into evidence without a signed medical-release from Clark. However, we, nor the circuit court, are called upon to be a "super personnel department" and second guess a company's established business procedure. Moreover, we do not find it to be an unreasonable practice by the company. The record does not indicate that Clark refused to sign a medical-records release. However, if Clark truly believed that he had not failed the alcohol test, he simply could have signed the medical-records release, so the Employer would release his record. Or, he could have obtained a copy of his laboratory test results from the hospital that did the testing to verify his assertion that the Employer had inaccurately stated the results. Furthermore, we have been unable to find any case law that requires a laboratory report be admitted into evidence at a telephonic administrative hearing to prove that an employee had a prohibited substance in his system, as opposed to relying on an employer's testimony. Based upon the record, we conclude the ALJ was justified in accepting the sworn testimony of Gully, the Employer's personnel director.
¶ 16. The Mississippi Supreme Court has defined "`misconduct' as used in the unemployment statute, [as] conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee." Corinth v. Cox, 565 So.2d 1142, 1143 (Miss. 1990) (citing Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982)). We are of the opinion that the decision of the MDES was supported by substantial evidence. The Employer had an established policy in the employee handbook, which prohibited an employee from being at work under the influence of any intoxicating substance; Clark had signed a form stating that he had received the Employer's company handbook; Clark arrived at work smelling of alcohol; the Employer maintained that Clark failed an alcohol test; and Clark admitted to the claims examiner that he had drunk a few beers within hours of arriving at work. We find that, the ALJ's decision that Clark's actions qualified as "misconduct" was not arbitrary nor capricious. According to Wheeler, Therefore, we find that the decision of the MDES was supported by substantial evidence and Mississippi law. Accordingly the judgment of the circuit court is reversed, and judgment is rendered to reinstate the decision of the MDES. See Miss. Employment Sec. Comm'n. v. Martin, 568 So.2d 725, 729 (Miss.1990).
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY IS REVERSED AND RENDERED REINSTATING THE DECISION OF THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY.
LEE, P.J., GRIFFIS, BARNES, ISHEE, CARLTON and MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J.
KING, C.J., Dissenting:
¶ 18. With respect to the majority, I dissent. I believe it is error to reverse the circuit court's ruling because the board of review's decision was not supported by substantial evidence.
¶ 19. The majority notes that Clark did not file a brief with this Court, which is true. Normally, a party's failure to submit a brief on appeal is equivalent to a confession of the errors alleged by the opposing *874 party. See Mahaffey v. Miss. Employment Sec. Comm'n, 912 So.2d 496, 497(¶ 6) (Miss.Ct.App.2005). However, the Court may elect to review the case for error. Id. Thus, this Court is not required to automatically reverse the trial court's decision based on Clark's failure to submit a brief on appeal.
¶ 20. The MDES argues that the circuit court erred by reversing the board of review's decision to deny Clark unemployment benefits, finding that it was not supported by substantial evidence. The majority states that the circuit court failed to indicate what substantial evidence was missing from the record. However, it is quite obvious what is missing from the record  corroborating evidence that Clark was intoxicated on the job.
¶ 21. The board of review denied Clark's unemployment benefits pursuant to Mississippi Code Annotated section 71-5-513 A(1)(b) (Supp.2006), which provides that a claimant will be disqualified from unemployment compensation if he was terminated based on acts of misconduct that occurred on the job. Section 71-7-13(3) specifically provides, in relevant part, that "[a]n employee discharged on the basis of a confirmed ... alcohol test ... shall be considered to have been discharged for willful misconduct." (Emphasis added). "The employer bears the burden of proving misconduct by clear and convincing evidence." Coahoma County v. Miss. Employment Sec. Comm'n, 761 So.2d 846, 851(¶ 14) (Miss.2000) (citing Miss.Code Ann. § 71-5-513 A(1)(c) (Supp.1999)).
¶ 22. During the hearing, Clark admitted that he drank a few beers the night before he reported to work. The majority states that Clark's statement was inconsistent because he "told the claims examiner that he drank a few beers several hours before reporting to work." However, the ALJ relied upon the following when making his decision to deny Clark's unemployment benefits:
The claimant had consumed five (5) 12 ounce cans of beer after 6 pm on August 12, 2007. The claimant reported to work on August 13, 2007, with the smell of alcohol on him. The claimant reported to work at 12:45 pm and was tested at 1:30 pm.
The test results indicated that the claimant's blood alcohol level exceed[ed] the cut off amount. The test results were not made available as evidence for the record. The ALJ relied upon Clark's admission that he drank beer the night before he reported to work. The fact that Clark drank beer the night before he reported to work is not substantial evidence that he may have been intoxicated when he reported to work the next day.
¶ 23. During the hearing with the ALJ, Gully testified that Peco's zero tolerance policy called for a reasonable suspicion test. Gully testified that two people in management were to observe the employee and fill out a checklist, which basically notes characteristics of intoxication. There is no checklist in the record. Nor does the record contain any testimony regarding the specific indicators of the checklist and their application to Clark. In regard to characteristics of intoxication, Gully simply testified that he smelled alcohol on Clark's breath and that Clark's breathalyzer test results revealed that he had an unacceptable blood alcohol level.
¶ 24. As previously mentioned, Peco did not submit a copy of Clark's alcohol test results. The majority states that Clark admitted that Gully showed him his alcohol test results. However, Clark explained that Gully gave him a handwritten note, indicating his alleged blood alcohol level. Gully refused to let Clark look at the lab report. Clark testified that he requested a copy of his test results from the lab, but *875 the lab instructed him to obtain his results from Peco. Peco refused to give Clark his results supposedly because of a company policy. However, Gully admitted that this alleged company policy was not contained in the employees' handbook.
¶ 25. The assertion by Gully, on behalf of Peco, that the lab report containing the test results was company property and could not be given to Clark is beyond incredible. When asked about the lab report by the ALJ, Gully, without restriction, stated that he could provide it to the ALJ. That response would seem to belie the reason that Peco gave for not releasing the lab report. The majority argues that Clark could have signed a medical release form to allow Peco to release the test results. That argument suggests that Peco required Clark's permission to introduce the lab report. Such a suggestion is absurd and inconsistent with Peco's statement to the ALJ.
¶ 26. It is clear that formal rules of evidence do not apply to administrative proceedings. McClinton v. Miss. Dep't of Employment Sec., 949 So.2d 805, 808(6) (Miss.Ct.App.2006). Thus, an administrative agency may consider hearsay evidence in making its decision. See McDerment v. Mississippi Real Estate Comm'n, 748 So.2d 114, 121(22) (Miss.1999). "However, `uncorroborated hearsay testimony is insufficient to rise to the required level of substantial evidence.'" McClinton, 949 So.2d at 808(6) (quoting Miss. Employment Sec. Comm'n v. McLane-Southern, Inc., 583 So.2d 626, 628 (Miss.1991)).
¶ 27. Gully simply testified that Clark smelled like alcohol and that his alcohol blood level was 106.3 milligrams. Gully did not administer the breathalyzer test, and no confirmed alcohol test results were made available to the ALJ. During the hearing, The ALJ noted Peco's lack of evidence, and the ALJ also mentioned Peco's lack of evidence in his judgment. Gully's testimony is uncorroborated hearsay evidence that does not rise to the level of substantial evidence necessary to support the board of review's decision.
¶ 28. Alternatively, the majority argues that Clark could have obtained a copy of the test results and submitted it to the ALJ. Such an argument is disingenuous. That argument is intended to infer that Clark had the obligation to disprove the allegations of misconduct. That argument, whether made explicitly or implicitly, is completely contrary to the law. The burden of proving misconduct was placed squarely, firmly and unalterably upon Peco. See Little v. Miss. Employment Sec. Comm'n, 754 So.2d 1258, 1260 (¶¶ 9-10) (Miss.Ct.App.1999). While Peco raised questions about Clark's condition, it wholly failed to meets its lawfully mandated burden of proof. Peco failed to prove misconduct by clear and convincing evidence.
¶ 29. Based on the lack of substantial evidence in the record, the circuit court's judgment should be affirmed. For the foregoing reasons, I dissent.
MYERS, P.J., JOINS THIS OPINION.
NOTES
[1] The Mississippi Employment Security Commission is now referred to as the Mississippi Department of Employment Security.
[2] Due to conflicting statements, it is unclear whether the results shown to Clark were handwritten, or whether Clark was shown the actual printout of the laboratory results. Gully testified that he did show the results to Clark; Clark wanted a copy, which Gully could not give him, and this was "when the blow-up came into effect." Clark maintains that he was only shown a handwritten copy. Regardless, the dispute over an actual laboratory printout does not disprove the evidence presented to the ALJ: Clark smelled of alcohol at work; a test had been administered; and the Employer unwaveringly maintained that a laboratory report existed, which substantiated that Clark was under the influence of alcohol at work.
[3] See Miss. Dep't of Corr. v. Scott, 929 So.2d 975, 979 (¶ 6) (Miss.Ct.App.2006).