# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-01369-COA

**WALTER J. SULLIVAN**                                                 **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                              **APPELLEES**
**EMPLOYMENT SECURITY AND MONROE**
**COUNTY BOARD OF SUPERVISORS**

DATE OF JUDGMENT:                07/31/2019
TRIAL JUDGE:                     HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED:       MONROE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          JEFFERY M. NAVARRO
ATTORNEYS FOR APPELLEES:         ALBERT B. WHITE
                                 DAVID HOUSTON
                                 JAMES RANDALL BUSH
NATURE OF THE CASE:              CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                     AFFIRMED - 09/29/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

> **EN BANC.**
>
> **McDONALD, J., FOR THE COURT:**

¶1.     Walter Jason Sullivan worked for the Monroe County Board of Supervisors (Monroe County) before being discharged for allegedly sending threatening electronic messages to several board members. The claims examiner for the Mississippi Department of Employment Security (MDES) denied Sullivan's claim for unemployment benefits on the basis of work misconduct. Sullivan appealed to the administrative law judge (ALJ), who affirmed the denial of his unemployment benefits. After appealing the ALJ's decision to the Board of Review, which also affirmed the denial, Sullivan appealed the decision to the Monroe County

Circuit Court. The circuit court affirmed the Board of Review's finding that Sullivan committed work misconduct, which disqualified him from unemployment benefits. The circuit court found that the Board's finding was supported by substantial evidence and was not arbitrary or capricious or contrary to law. Finding no error, we affirm.

**Statement of the Facts**

¶2.    Sullivan was employed by Monroe County in Aberdeen, Mississippi, as a Veterans Service Officer for approximately four years and one month. Sullivan submitted his resignation via email on May 11, 2018, with an effective date of July 31, 2018. Monroe County accepted his resignation on May 25, 2018.

¶3.    On June 18, 2018, Monroe County advertised through local media for applicants to fill Sullivan's position. After seeing the announcement, Sullivan wanted to extend his resignation date. He made several social media posts urging veterans to oppose the hiring of a replacement. In response, several veterans petitioned Monroe County to extend Sullivan's resignation date because Sullivan would be leaving behind an enormous workload. Sullivan himself attempted to rescind his resignation and extend the resignation date to September 30, 2018, by sending an email to Ronnie Boozer, the Monroe County Chancery Clerk. But on June 28, 2018, Boozer informed Sullivan that Monroe County's board members voted to deny his sixty-day extension.

¶4.    On June 29, 2018, Sullivan wrote Boozer a letter, again requesting to rescind his resignation letter and to extend the resignation to September 30, 2018. Monroe County's

2

board members decided to place the matter of Sullivan's extension on the July 6, 2018 board meeting's agenda. On July 5, 2018, and July 6, 2018, prior to the board meeting, Sullivan sent text messages, social media messages, and emails to several board members of the Monroe County Board of Supervisors. On the night of July 5, Sullivan sent the following email to board member Billy Kirkpatrick:

> If you don't bring up my request for a vote tomorrow, uh you [sic] don't do me an injustice but you do for the veterans of Monroe County. Talk is cheap, Billy. Actions speak louder than words and the veterans of Monroe County will hold you all accountable for your action or inaction. Goodnight sir.

On the morning of July 6, Sullivan sent the following message via Facebook to board member, James Sullivan:

> You and Fulton and Jose should honor my request to provide a smoother transition to my replacement. It's not fair to our veterans to do anything else. My assistant is not capable of training anyone else and should be removed . . . the hole is getting dug deeper and I will cover it up for each of you if given this extension.

That morning, Sullivan also sent the following text message to board member, Chip Chism:

> You're in a mess for re-election if you don't do what I ask of each of you. Its for the veterans, not for me. It's called selfless service. That what I do. Figure it out, Chip and I will go out professionally on the 30th of September if you don't.

¶5.    As a result of Sullivan's messages, instead of voting on whether to extend Sullivan's resignation date, on July 6, 2018, Monroe County's board members voted unanimously to terminate Sullivan's employment. Specifically, Monroe County discharged Sullivan because of the perceived threatening messages.

3

¶6.     On July 11, 2018, Sullivan filed a claim for unemployment benefits. During the investigation of Sullivan's termination, the MDES claims examiner requested more information from Sullivan regarding the messages. Sullivan failed to respond to the claims examiner's request. Monroe County provided information regarding Sullivan's termination on the MDES's fact-finding questionnaire for unemployment benefits. In a decision dated July 23, 2018, the claims examiner found that Sullivan was discharged for work misconduct and determined that Sullivan was disqualified from receiving unemployment benefits.

¶7.     On July 24, 2018, Sullivan appealed the decision of the claims examiner to an ALJ for the MDES. The ALJ conducted a telephonic hearing on August 17, 2018. Sullivan, Boozer, Sullivan's attorney, and the MDES's attorney participated. Boozer testified that Monroe County's board members voted unanimously to discharge Sullivan on July 6, 2018, because Sullivan sent threatening messages to several of its members. During the hearing, Sullivan testified that the county administrator told him that he was terminated immediately because of the single message that he sent to Chip Chism. Sullivan explained that the text message referred to the veterans' petition that urged Monroe County to allow him to remain in his position until September because of the enormous workload. Monroe County never responded to the petition, which Sullivan stated caused him to become frustrated. Although Sullivan acknowledged that he was previously denied the sixty-day extension on June 28, he stated that he sent Chism the text message on July 6 because he remained committed to the veterans and hoped that Monroe County would extend his resignation date. He admitted that

4

he overreacted and apologized for his behavior but maintained that he did not believe the text message established work misconduct that required termination.

¶8.     Based on the testimonies of Boozer and Sullivan, and the documentary evidence, including the messages, the ALJ determined that Sullivan was properly discharged for work misconduct and on August 20, 2018, affirmed the claims examiner's decision.  According to the ALJ, Sullivan disagreed with his employer on personnel matters, and Sullivan attempted to order the board members to meet his requests by sending threatening messages. Therefore, Sullivan's conduct constituted work misconduct pursuant to the MDES Regulation 308.00.[1]  On August 28, 2018, Sullivan appealed the ALJ's decision to the MDES's Board of Review, which affirmed the ALJ's ruling on September 13, 2018.  The Board of Review adopted the findings of fact and opinion of the ALJ.

¶9.     On September 20, 2018, Sullivan appealed the Board of Review's decision to the Monroe County Circuit Court.  The circuit court found that the Board of Review's decision was supported by substantial evidence, was not arbitrary, and contained no errors of law. Therefore, the circuit court affirmed the ALJ's decision on July 31, 2019.  On August 30, 2019, Sullivan appealed circuit court's order, raising the following issues: (1) whether the denial of unemployment benefits must be based upon reasons given by the employer at the termination stage; (2) whether all of the documents were properly admitted into evidence

---

[1] MDES Regulation 308.00 defined what constituted work misconduct, which is discussed later in the opinion.

over his objection; and (3) whether he was guilty of inappropriate conduct. Finding no error, we affirm.

## Standard of Review

¶10. "The standard of review in cases where this Court examines the circuit court's judgment to affirm the Board of Review's decision is abuse of discretion." *Miss. Dep't of Emp. Sec. v. Clark*, 13 So. 3d 866, 870 (¶8) (Miss. Ct. App. 2009). "In the absence of fraud and if supported by substantial evidence, an order from the Board of Review of the MDES on the facts is conclusive in the lower court." *Jackson-George Reg'l Libr. Sys. v. Miss. Dep't of Emp. Sec.*, 226 So. 3d 133, 136 (¶7) (Miss. Ct. App. 2017) (quoting *EMC Enter. Inc. v. Miss. Dep't of Emp. Sec.*, 11 So. 3d 146, 150 (¶9) (Miss. Ct. App. 2009)).

¶11. "In administrative matters, the agency, and not the reviewing court, sits as the finder of fact." *Ross v. State*, 286 So. 3d 673, 676 (¶5) (Miss. Ct. App. 2019) (quoting *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003)). "The reviewing court may not substitute its judgment for that of the administrative agency, or reweigh the evidence." *Id.* (quoting *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 892 (¶12) (Miss. 2001)). This Court will not disturb an administrative agency's decision on appeal unless "it 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Pub. Emps' Ret. Sys. v. Dozier*, 995 So. 2d 136, 138 (¶7) (Miss. Ct. App. 2008) (citations omitted) (quoting *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶11) (Miss. 2000)).

6

**Discussion**

¶12. Sullivan argues his actions did not constitute work misconduct, and therefore his unemployment benefits should not have been denied. Further, Sullivan argues that the MDES and Monroe County failed to meet the burden to show substantial evidence that he committed work misconduct. However, the circuit court found that Sullivan's actions of sending threatening messages to three county supervisors constituted work misconduct for which his unemployment benefits should be denied. After reviewing the record, we find that the circuit court did not err.

¶13. Under Mississippi Code Annotated section 71-5-513(A)(1)(b) (Supp. 2012), an individual is disqualified from receiving unemployment benefits if "he was discharged for misconduct connected with his work, if so found by [the MDES]." The Mississippi Supreme Court has defined misconduct as the following:

> conduct evincing such willful and wanton disregard of the employer's interest as is found in *deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee*. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertencies and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Bounds v. Miss. Dep't of Emp. Sec.*, 271 So. 3d 634, 636-37 (¶8) (Miss. Ct. App. 2018) (emphasis added) (quoting *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982)). "The

7

employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Columbus Light & Water Dep't v. Miss. Dep't of Emp. Sec.*, 281 So. 3d 920, 924 (¶12) (Miss. Ct. App. 2019) (quoting *Kidd v. Miss. Dep't of Emp. Sec.*, 202 So. 3d 1283, 1285 (¶6) (Miss. Ct. App. 2016)). Under the MDES's policies, in order to file for unemployment, an individual "must be unemployed through no fault of [his] own." *Id*. at 924 (¶12).

¶14. Further, MDES Regulation 308.00 provided that work misconduct shall be defined but not limited to the following:

1. The failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed;
   a. An individual shall be found guilty of employee misconduct for the violation of an employer rule only under the following conditions:
      i. the employee knew or should have known of the rule;
      ii. the rule was lawful and reasonably related to the job environment and performance; and
      iii. the rule is fairly and consistently enforced.
2. A substantial disregard of the employer's interests or of the employee's duties and obligations to the employer;
3. Conduct which shows intentional disregard -- or if not intentional disregard, utter indifference - of an employer's interests as is found in deliberate violations or *disregard of standards of behavior which the employer has the right to expect of the employee*; or
4. Carelessness or negligence of such degree or recurrence as to demonstrate wrongful intent.

Miss. Admin. Code § 20-1-101:308.00(A) (emphasis added) (repealed Jan. 26, 2020).

¶15. Sullivan argues that the circuit court's decision should be reversed because his conduct was one isolated incident like the employee in *SkyHawke Technologies LLC v.*

8

*Mississippi Department of Employment Security*, 110 So. 3d 327, 329 (¶2) (Miss. Ct. App. 2012). We disagree. In *Skyhawke*, SkyHawke employed Shawn Gillis for six years as a sales representative. *Id*. During work, Alice Moreland called Gillis an obscene name. *Id*. As a result, Gillis responded that evening by sending Moreland several vulgar text messages and voicemails. *Id*. The following day, Gillis approached Moreland at her cubicle, and he asked her whether she had received his messages. *Id*. Moreland reported Gillis's behavior, which led to Gillis's employment being terminated. *Id*. Because Gillis was terminated from his job for work misconduct, he was initially denied unemployment benefits. *Id*. at (¶4). An ALJ reversed that denial, finding that Gillis's conduct was an isolated incident of poor judgment and not misconduct. *Id*. at 330 (¶7). The MDES Board of Review affirmed the ALJ's decision, as did the Madison County Circuit Court. *Id*. at 329 (¶4). We affirmed the circuit court's order, agreeing that Gillis's conduct was an isolated incident of poor judgment and not misconduct. *Id*. But Sullivan's case is distinguishable from *Skyhawke*. Unlike *Skyhawke*, Sullivan's actions were not the result of a single isolated incident. He sent three messages to three different board members demanding they extend his resignation date, threatening that otherwise consequences would follow. Threatening one's employer is substantively different than inappropriate communication with a co-worker.

¶16. Although Sullivan argues that his termination was based on the one message he sent to Chip Chism and that the ALJ erred in admitting messages into evidence, the record reflects otherwise. During the claims examiner's investigation, Monroe County stated that Sullivan's

9

employment was terminated because he sent threatening **messages** to several board members. Further, Sullivan failed to respond to the claims examiner's request for more information regarding the messages and reasons for his job termination.[2] Additionally, on the MDES's fact-finding questionnaire for unemployment benefits, Monroe County stated the following as the reasoning behind Sullivan's job termination:

> Walter "Jason" Sullivan sent threatening text messages to several of our county supervisors. One message in particular sent from Mr. Sullivan to Mr. Chip Chism caused Mr. Chism to motion to have Mr. Sullivan terminated immediately during the board meeting on July 6, 2018. After discussion held in executive session, the board of supervisors voted unanimously to terminate Mr. Sullivan effective immediately.
>
> . . . .
>
> Threatening elected officials is against the law. We could have Mr. Sullivan arrested for his actions but as of today that decision has not been made.

The claims examiner also stated in Sullivan's "Notice of Nonmonetary Determination Decision" that Sullivan was discharged after sending threatening messages and not just the one message sent to Chism. Therefore, the ALJ correctly admitted the July 5 and 6 messages and found that Sullivan's employment was terminated because of the threatening messages that he had sent to the three board members.

¶17. Sullivan further argues that there was no substantial evidence to find that he committed "work misconduct." The Mississippi Supreme Court defines substantial evidence

---

[2] Sullivan failed to provide any evidence, such as the minutes from Monroe County's board meeting, that may have stated the single message was the cause of Sullivan's termination.

as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Ulrich v. Pub. Emps.' Ret. Sys.*, 281 So. 3d 259, 262 (¶11) (Miss. Ct. App. 2019) (citing *Pub. Emps.' Ret. Sys. v. Walker*, 126 So. 3d 892, 895 (¶7) (Miss. 2013)). "[E]vidence must be more than a 'mere scintilla or suspicion.'" *Id*. (quoting *Miss. Real Estate Comm'n v. Anding*, 732 So. 2d 192, 196 (¶3) (Miss. 1999)). "If an agency's decision is not based on substantial evidence, however, it will be deemed arbitrary and capricious." *Jackson-George Reg'l Libr. Sys.*, 226 So. 3d at 136 (¶8) (quoting *Case v. Pub. Emps.' Ret. Sys.*, 973 So. 2d 301, 310 (¶20) (Miss. Ct. App. 2008)).

¶18.    In this case, a reasonable person could find that by sending several messages, Sullivan was intending to threaten the supervisors to extend his resignation date "or else." There is a difference between threatening ballot-box action if public officials fail to respond to a matter of public concern and the threats Sullivan made to board members if they did not act favorably on his personal request.

¶19.    Moreover, Sullivan violated rules as established in the employee handbook that would justify termination;[3] among them was a rule prohibiting "discourtesy, improper conduct or abusive language to the public or another employee." Monroe County maintained that Sullivan was provided an employee handbook, and therefore he should have known the rules. By threatening the supervisors, Sullivan deliberately violated and disregarded standards of

---

[3] In *Johnson v. Mississippi Employment Security Commission*, 761 So. 2d 861, 867 (¶25) (Miss. 2000), the Mississippi Supreme Court affirmed a denial of unemployment benefits based on a threat that violated provisions of the employee handbook.

behavior, which Monroe County had the right to expect. Combining the rules violations with the obvious threats in the messages themselves, there was substantial evidence to support Sullivan's termination for work misconduct. Because the ALJ's decision was supported by substantial evidence, not arbitrary or capricious, not beyond the scope or power granted to the agency, and not in violation of Sullivan's constitutional rights, we will not disturb the administrative agency's findings.

¶20. Additionally, Monroe County was not obligated to rescind Sullivan's resignation letter after already accepting his resignation. On May 11, 2018, Sullivan sent his resignation letter to Monroe County. The County accepted Sullivan's resignation on May 25, 2018. Once Sullivan's resignation was accepted, Monroe County had no obligation to rescind it.[4]

¶21. During his last month as an employee of Monroe County, Sullivan threatened several board members to vote to rescind his resignation letter and extend his resignation date. As a result of his actions, Sullivan was terminated for work misconduct. We hold that there was sufficient evidence presented at Sullivan's unemployment hearing to affirm the ALJ's finding, the Board of Review's finding, and the circuit court's finding that Sullivan was disqualified from receiving benefits due to that misconduct.[5]

---

[4] In *Blackwell v. Mississippi Board of Animal Health*, 784 So. 2d 996, 998 (¶3) (Miss. Ct. App. 2001), we found that an employer was not obligated to rescind a resignation letter that the employer had already accepted.

[5] Sullivan was disqualified from receiving unemployment benefits effective July 7, 2018, until he returned to work and earned eight times his weekly benefit amount or $1,080 under employment.

**Conclusion**

¶22.    Because Monroe County presented substantial evidence that Sullivan's messages constituted work misconduct, the evidence is not arbitrary or capricious or contrary to law, and Monroe County had no obligation to rescind Sullivan's resignation letter, we affirm the circuit court's order.

¶23.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR.  BARNES, C.J., NOT PARTICIPATING.**